Lucacher *v.* Kerson et al., Appellants.

438

Argued December 13, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*A. Samuel Buchman,* for appellants.

*Madison S. DuBois,* with him *James R. Wilson* and *James N. Lafferty,* for appellee.

OPINION BY DITHRICH, J., January 18, 1946:

Plaintiff brought this action of assumpsit against defendants for breach of an oral contract of employment. The jury found for plaintiff and defendants have brought this appeal from the refusal of their motions for a new trial and for judgment n. o. v.

In passing upon the motion for judgment n. o. v., we shall, as we are required to do, read the testimony in the light most advantageous to plaintiff, resolving all conflicts in his favor and giving him the benefit of facts and inferences of fact pertaining to the issues involved, which may reasonably be deduced from the evidence. *Muehlhof v. Reading Co.,* 309 Pa. 17, 162 A. 827; *Gourley et ux. v. Pittsburgh,* 353 Pa. 112, 44 A. 2d 270. Viewed in

that light the facts are substantially as follows: Plaintiff is a window trimmer and decorator. His work consists of preparing and arranging shop window displays for merchants engaged in the women's wear business. Defendants Max Kerson and Isadore Kerson, trading as Kerson Brothers, conduct and operate five women's wear shops in Philadelphia and Norristown. In April 1943 defendants placed an advertisement in the *Women's Wear Daily,* a trade publication, for a window trimmer. Plaintiff answered the advertisement and a meeting was arranged between him and the defendant Max Kerson in the City of New York. At that meeting, plaintiff informed defendant of the extent of his experience as a window trimmer and that his specialty was women's wear work. He stated that he had been employed in such capacity by various chain stores, that he had done free lance work, and that he was at the time employed at the Gaston Store in Somerville, New Jersey. He was thereupon offered employment at the rate of sixty dollars per week, which he refused to accept because he felt that the compensation was not adequate to warrant moving his family to Philadelphia from New York where they resided.

March 9, 1944, plaintiff received a letter from the defendant Max Kerson in which he sought to reopen negotiations for the services of plaintiff. As a result of this and other correspondence between the parties, a second meeting was arranged with Max Kerson. Plaintiff went to Philadelphia on March 21, 1944, and thence, in the company of Max Kerson, to Norristown to meet with the other defendant Isadore Kerson. At this meeting the parties finally reached an oral agreement. Plaintiff was to be permanently employed at a salary of $85 per week commencing April 10, 1944. In reliance upon and pursuant to the contract of employment, plaintiff gave his former employer two weeks' notice of his intention to terminate his then existing employment, and on April 10, 1944, reported for work at de-

fendants' office in Philadelphia. He was instructed to report for work the following day at the Norristown Store operated by the defendant Isadore Kerson and worked there for three days. On the fourth day, to-wit, Friday, April 14, 1944, he was summarily dismissed from his employment, paid $85, and told that his services were no longer desired. Although he made diligent effort, he was not able to secure any other employment until May 30, 1944. He then obtained employment for four days only and remained unemployed until June 13, 1944. As a condition of his employment he was required to live in Philadelphia and that necessitated removing his family to Philadelphia.

The case turns on what was intended by the term "permanent employment." Defendants rely on the general rule that a contract of hiring for an indefinite time is a contract terminable at the will of either party. But there are many exceptions to the general rule. As stated by the Supreme Court, speaking through Mr. Justice STERN, in Slonaker v. The P. G. Publishing Company, 338 Pa. 292, 296, 13 A. 2d 48: "The general rule is that when a contract provides that one party shall render service to another, or shall act as his agent, or shall have exclusive sales rights within certain territory, but does not specify a definite time or prescribe conditions which shall determine the duration of the relation, the contract may be terminated by either party at will: (citing cases). It is true that such a result does not follow in every instance, because it is the intention of the parties which is the ultimate guide, and, in order to ascertain that intention, the court may take into consideration the surrounding circumstances, the situation of the parties, the objects they apparently have in view, and the nature of the subject-matter of the agreement. Thus contracts which do not fix a definite time for the duration of the relationship which they create are sometimes construed as providing for a *reasonable time* or some particular period inferred from the nature and

circumstances of the undertaking. Illustrations are to be found in Weidman v. United Cigar Stores Co., 223 Pa. 160, Nolle v. Mutual Union Brewing Co., 264 Pa. 534, and Rossmassler v. Spielberger, 270 Pa. 30; see also 4 Williston on Contracts (rev. ed.), section 1027A (3), p. 2852." (Italics supplied.) In the *Weidman* case, supra, the Supreme Court said, page 161: "In a contract of hiring, where no definite period is expressed, in the absence of facts and circumstances showing a different intention, the law will presume a hiring at will . . . Where, however, a contrary intention can be fairly derived from the contract itself, the law will allow such intention to prevail; . . ." and, on page 163: "To impose on this contract a strictly legal construction of the terms used in the hiring clause, would allow the employer, for no breach whatever on the part of the plaintiff, to deprive the latter of his employment within the first hour after he had entered upon his duties. Any such construction would lead to results which could not reasonably have been intended and would be in plain disregard of the true meaning and spirit of the agreement."

While we have not been furnished with and have been unable to discover any Pennsylvania case directly in point, in most jurisdictions a contract for "permanent employment" will be upheld if there was consideration for the contract other than the services rendered in the employment. In *Carnig v. Carr*, 167 Mass. 544, 46 N.E. 117, a case frequently cited, plaintiff, who was engaged in the business of an enameler, entered into a contract with defendant under which he agreed to give up his business and sell his stock in trade to defendant, in consideration whereof, the defendant agreed to employ the plaintiff *permanently* as an enameler and engraver. Plaintiff entered the defendant's employ and satisfactorily performed the work required of him. He was discharged and the main defense was the indefinite character of the contract. The court held that, consid-

ering the circumstances surrounding the making of the contract, the words "permanent employment" meant that, so long as the defendant was engaged in enameling and had work which the plaintiff could and desired to do, and so long as the plaintiff was able to do the work satisfactorily, the defendant would employ him, ". . . and that in that sense the employment would be permanent." That case was cited with approval in *Riefkin v. E. I. DuPont De Nemours & Co.,* 290 Federal 286, where "According to plaintiff's evidence, he was induced to enter into the agreement in question by the representations of the defendant to the effect that, if he would resign from the position he then held with the United States Government and enter the employ of the defendant, to take charge of the purchase of coal, he would be given permanent employment in that capacity, so long as he rendered satisfactory service and was loyal to the defendant's interests. His evidence further tended to show that he rendered satisfactory service, was loyal to the interests of defendant, and that he was discharged without cause." The case was submitted to the jury for a finding of fact, "subject to the view of the court as to the law." The jury found in favor of the plaintiff but the court awarded judgment for the defendant. In reversing the judgment of the court below, the Court of Appeals held that "The circumstances surrounding the making of this contract largely control the interpretation to be given the words 'permanent employment' as used therein, for it must be assumed that the parties, knowing those circumstances, contracted with reference to them . . . May it be said that it was within the contemplation of either party that 'permanent employment' as used in the contract, meant that the plaintiff, the day following his resignation from his position with the Government and the assumption of his new duties, could have been summarily discharged without any liability on the part of the defendant? Such a result could not have been contemplated by either party. The

more reasonable view is that the parties contemplated that, so long as the defendant continued in a business requiring the purchase of coal and the plaintiff performed loyal and satisfactory service, he would continue to be employed in the capacity specified in the contract." See *Pennsylvania Company v. Dolan*, 32 N. E. 802, 805, 6 Ind. App. 109; *Hall v. Hardaker*, 55 So. 977, 980, 61 Fla. 267, adopting definition in *Carnig v. Carr*, supra; *Skagerberg v. Blandin Paper Company*, 266 N. W. 872, 197 Minn. 291. In the instant case, plaintiff's resigning his former employment and removing from New York to Philadelphia, where he also contemplated removing his family, and the other circumstances surrounding the making of the contract, lead us to the conclusion that it was a contract capable of enforcement.

The only reason assigned in support of the new trial motion that merits discussion is that the court erred in its charge to the jury as to the measure of damages and plaintiff's alleged failure to mitigate his damages. Plaintiff did everything that reasonably could be expected of him to secure other employment and he certainly was under no obligation to seek employment with his former employer after he had given him notice of his intention to leave to take up other employment. Furthermore, "The principle is well established that in an action to recover damages for wrongful discharge from employment the defense that the claimant earned or could have earned a livelihood during the term of his discharge is an affirmative one, and the burden of proof rests upon the defendant. (citing cases)" *Gordon et al. v. Tomei et al.*, 144 Pa. Superior Ct. 449, 468, 19 A. 2d 588. We have carefully reviewed the testimony and particularly the charge of the court and find no fundamental error. Had counsel for defendants desired additional instruction as to the measure of damages, he should have so stated when the court asked: "Any additions or corrections, Mr. Buchman?"

The judgment is affirmed.