## Sutherin v. Rockwell International Corporation

*Paul H. Titus,* for plaintiff.
*James H. McConomy,* for defendant.

NARICK, A.J., January 31, 1986 — This matter is before the court for disposition of defendant's preliminary objections in the nature of a demurrer, and, in the alternative, a motion for·a more specific pleading. To sustain preliminary objections in the nature of a demurrer, "[I]t must appear with certainty that, upon the facts averred, the law will not permit recovery by plaintiff. Where any doubt exists as to whether or. not the preliminary objections should be sustained that doubt should be resolved by refusing to sustain the objections." *Schott v. Westinghouse Electric Corp.,* 436 Pa. 279, 291, 259 A.2d 443, 449 (1969). Upon consideration of the pleadings, the excellent arguments and briefs by counsel, we sustain defendant's preliminary objections and dismiss plaintiff's complaint as there is no adequate basis in Pennsylvania law on which recovery can be based. ·

## DISCUSSION

Plaintiff alleges he was wrongfully discharged from Rockwell International Corporation. He has brought a two-part complaint seeking compensation and reinstatement of his former position.

Under Pennsylvania law, an employee has a cause of action for wrongful discharge if the discharge was in breach of an express contract or implied contract, in violation of a statute or contrary to public policy. See *Geary v. United States Steel Corporation,* 456 Pa. 171, 319 A.2d 174, (1974); *Lacacher v. Kerson,* 158 Pa. Super. 437, 45 A.2d 245 (1946). Plaintiff does not plead the existence of an expressed contract and therefore, we need not address this element. Likewise, there is no need for discussion of the basis of a statutory claim, as the plaintiff clearly has recourse under the Pennsylvania Human Relations Act, 43 Pa.C.S. §951, et seq. Relief under this statute is exclusive for instances of employee discrimination for reasons of race, age, sex or religion. See *Wolk v. Saks Fifth Avenue Inc.,* 728 F.2d 221 (3d Cir., 1984); *Bruffett v. Warner Communications Inc.,* 692 F.2d 910 (3d Cir., 1982). Therefore, we confine our discussion to breach of an implied contract or a violation of public policy.

We begin this discussion with count II of plaintiff's complaint in assumpsit. Plaintiff alleges the existence of an implied contract by virtue of six promotions in nine years, his excellent performance and certain company practices. He further alleges that this implied contract entitles him to a reasonable expectation in regular and ongoing employment and that defendant through its practice agreed not to terminate this implied employment contract without cause. Plaintiff contends that by so terminating this relationship, defendant has breached this contract.

Pennsylvania law presumes that an employee serves at the pleasure of an employer and that the relationship may be terminated by either party and at any time, absent a specific term of duration. "An employer may discharge an employee with or with-

out cause, at pleasure, unless restrained by some contract." *Yaindl v. Ingersoll-Rand Co., etc.,* 281 Pa. Super. 560, 422 A.2d 611, 616 (1980), citing *Henry v. Pittsburgh & Lake Erie R.R.,* 139 Pa. 289, 21 Atl.157 (1891). Plaintiff may overcome this presumption by showing either a contrary custom, practice or policy or that consideration was given in addition to the normal services and duties of the employee. *Adams v. Budd Co.,* 583 F.Supp. 711 (E.D. Pa., 1984). The plaintiff herein does not set forth an instance of consideration. Rather, he bases his claim upon the contention that defendant's custom, practice or policy of promoting him, issuing outstanding progress reports and increasing his salary constitutes an adequate legal basis for this court to submit the facts to a jury to determine the existence of an implied contract. A similar contention was discussed in *Adams,* supra. In *Adams,* plaintiff sought enforcement of an implied contract which he claimed arose by defendant employer's practice of promoting from within the company, coupled with the expectation that once promoted to management the employee remains a manager until retirement. As he was promoted to this management level, he contended that the promotion created an implied contract for lifetime employment. The federal court dismissed this argument, reasoning that plaintiff was unable to single out a specific promise or representation of lifetime employment. The court also was not persuaded by plaintiff's argument that an implied contract existed as a result of a previous pattern of promotions. In the instant matter, plaintiff has also not pleaded a singular specific promise or a recognizable custom, practice or policy of employee retention. We cannot find a reasonable expectation of lifetime employment based solely on a

series of promotions. Thus, we sustain defendant's preliminary objections and grant his demurrer as to count II of the complaint.

We now turn to count I of the complaint. In count I, plaintiff alleges that the impetus for his termination was (1) his age, and (2) his contesting of defendant's business practices. Plaintiff contends that such reasons for termination of an employee are a violation of Pennsylvania public policy.

Since there is no contract, either expressed or implied, plaintiff is an "at-will employee." Since 1891, the common law in Pennsylvania has been that an at-will employment relationship may be terminated at any time and moreover, for any reason by either party. *Henry,* supra. The theory behind this policy is that an employer must have control over the destiny of his resources to enable him/her to adequately compete in general commerce. With a changing modern society, this policy has been altered to allow a narrow exception. In the landmark decision of *Geary,* supra, the Pennsylvania Supreme Court acknowledged the existence of a nonstatutory cause of action for wrongful discharge:

"It may be granted that there are areas of an employee's life which his employer has no interest. An intrustion into one of these areas by virtue of the employer's power of discharge might plausibly give rise to a cause of action, particularly where some recognized facet of public policy is threatened. The notation that substantive due process elevates an employer's privilege of firing and discharging his employees to an absolute constitutional right has long since been discredited. But this case does not require us to define in comprehensive fashion the perimeters of this privilege, and we decline to do so. We hold only that where the complaint itself discloses a plausible and legitimate reason for termi-

nating an at-will employment relationship and no clear mandate of public policy is violated thereby, an employee at will has no right of action against his employer for wrongful discharge." *Geary,* supra, at 184.

Subsequent decisions have created from the *Geary* holding an exception to the common law doctrine based on public policy. This public policy exception is to be recognized when important and well known facets of public policy are at stake and there is no available statutory remedy. *Harrison v. Fred S. James,* 558 F.Supp. 438 (E.D. Pa., 1983).

Plaintiff is seeking recovery under this public policy exception. He bases his cause of action on the claim that defendant company's actual reasons for firing him were his age and his contesting company policy decisions that were allegedly contrary to federal and state statutory guidelines.

Claims for relief for terminating an employee for contesting company practices fall into two categories. In *Geary,* relief was denied and a cause of action not recognized upon this claim. The *Geary* court found that plaintiff's contesting of the company's alleged wrongful practice amounted to the plaintiff making "[a] nuisance of himself, and the company discharged him to preserve administrative order in its own house." *Geary* at 180.* Conversely, a cause of action for compensating a wrongful discharge based on public policy violations were granted in *Reuther v. Fowler & Williams Inc.,* 255 Pa. Super. 28, 386 A.2d 119 (1978) (termination for serving as a juror), in *Novosel v. Nationwide Ins. Co.,* 721 F.2d 894 (3rd Cir., 1983) (refusal to partici-

---

*We note that the *Geary* court made this determination on appeal from the sustaining of a demurrer.

pate in employer's lobbying practices), in *Rettinger v. American Can Co.*, 574 F.Supp. 306 (M.D. Pa., 1983) (termination for filing Workman's Compensation claim violated public policy protecting statutory right to compensation for a work-related injury), and in *Molush v. Orkin Exterminating Co. Inc.*, 547 F.Supp. 54 (E.D. Pa., 1982) (discharge of public employee after polygraph examination violated public policy expressed in anti-polygraph statute). Thus we have, on one hand, the court's deference to the common law versus the blossoming existence of a public policy exception based on issues of great importance and statutorily defined elements of public policy. The Superior Court of this commonwealth recognized this split and fashioned a guide. Whether a discharge was contrary to public policy must be judged on a case-by-case basis. *Yaindl,* supra. We must balance the employee's interest in making a living against the employer's interest in running his business efficiently, and any social interest implicated in the discharge. *Yaindl,* at 572. But, to reach a balancing approach there must be at issue a matter of public policy that is recognized and important. *Geary,* supra, at 184.

This is not a case such as *Rettinger,* supra, where an employee was allegedly terminated for exercising a statutorily protected right. We need not decide here whether plaintiff would have stated a cause of action if he had alleged that he was terminated in retaliation for filing an age discrimination claim. As discussed earlier, such a claim under the appropriate statutory framework provides adequate recourse for terminations in violation of the public policy against age discrimination, and plaintiff herein cannot maintain this common law action as an alternate remedy. We are left then with the allegations relating to plaintiff's protests against his employer's

practices. While the court in *Geary,* supra, recognized that employee protest may be commendable, it is implicit in the court's holding in that case that such protest will rarely invoke specific and important public concerns that would merit protection through a wrongful discharge suit. An exception is a case such as *Novosel,* supra, where an employee's own First Amendment rights are violated by the employer's attempts to coerce him to participate in a political process. We do not find such an exceptional circumstance here. Although plaintiff has alleged that the practices of his employer which he protested were unlawful, they did not infringe specifically on his rights and must be redressed other than through the vehicle of an individual wrongful discharge suit.

For the foregoing reasons, we sustain defendant's preliminary objections in the nature of a demurrer and enter the following.

## ORDER

And now, this January 31, 1986, it is hereby ordered adjudged and decreed that defendant's preliminary objections in the nature of a demurrer be sustained and the complaint dismissed with prejudice.