**Daniel L. SCHLEIG, Gary Houseknecht and Jeff Swank, Plaintiffs,**

v.

**COMMUNICATIONS SATELLITE CORPORATION, Defendant.**

**Civ. No. 88–0019.**

United States District Court, M.D. Pennsylvania.

Nov. 10, 1988.

---

Michael L. Sholley, Rudnitsky & Hackman, P.C., Selinsgrove, Pa., for plaintiffs.

Robert J. Smith, Washington, D.C., Vincent Candiello, Morgan, Lewis & Bockius, Harrisburg, Pa., for defendant.

## OPINION

MUIR, District Judge.

### I. Introduction.

On January 8, 1988, Plaintiffs Daniel L. Schleig, Gary Houseknecht, and Jeff Swank filed suit alleging the breach of an employment contract by Defendant Communications Satellite Corporation ("COMSAT"). On August 15, 1988, Defendant COMSAT filed a motion for summary judgment, as well as a statement of undisputed material facts in support of its motion. On August 29, 1988, COMSAT filed a brief in support of its motion for summary judgment. On September 16, 1988, Plaintiffs Schleig, Houseknecht, and Swank filed a memorandum opposing COMSAT's motion for summary judgment. On October 3, 1988, COMSAT filed a reply brief. The motion of Defendant COMSAT for summary judgment is now ripe for our decision. We have jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

### II. Facts.

This case arises out of alleged employment contracts entered into between Schleig and COMSAT in November, 1985, and between Houseknecht and Swank and COMSAT which were apparently entered into during the summer of 1985. The alleged employment contracts involving Schleig and COMSAT on the one hand, and Houseknecht, Swank, and COMSAT on the other, arose under two separate circumstances.

On November 1, 1985, Schleig was interviewed by J.R. Silvius, Station Director of COMSAT at Roaring Creek, Pennsylvania, concerning employment with COMSAT. (Amended Complaint, ¶ 9). Silvius told Schleig that because of an existing contract between COMSAT and INTELSAT, the position of technician was available and would be in existence until at least November, 1989, a minimum period of five years.

(Amended Complaint, ¶ 10). Schleig concedes that Silvius never told him that he would have work for the entire five year period. (Schleig Deposition at 142). Silvius offered Schleig employment with COMSAT by way of a letter dated November 1, 1985, with the employment to begin on November 18, 1985. (Amended Complaint, ¶ 11). Schleig accepted this offer of employment by letter dated November 2, 1985. (Amended Complaint, ¶ 14). After accepting employment with COMSAT, Schleig terminated his position with his employer, Borg–Warner, in York, Pennsylvania, purchased a home near the Roaring Creek Station, and relocated his family. (Amended Complaint, ¶ 15). Sometime after beginning his employment with COMSAT, Schleig read the COMSAT/INTELSAT contract and was disturbed by Article 7, which provided that INTELSAT could cancel the contract at any time. (Schleig Deposition at 73). Silvius had never mentioned to Schleig that INTELSAT could cancel the contract at any time. (Schleig Deposition at 77). On August 18, 1986, COMSAT terminated Schleig after the INTELSAT Board of Governors voted to cancel the COMSAT/INTELSAT contract. (COMSAT's Exhibit G). In the amended complaint, Schleig seeks recovery under the alternate theories of breach of contract and promissory estoppel.

Unlike Schleig, Houseknecht and Swank had been employed by COMSAT since 1983. (Amended Complaint, ¶ 32). In 1985, by reason of a transaction with A.T. & T., COMSAT told Houseknecht and Swank that their positions with COMSAT could be terminated in 1987. (Amended Complaint, ¶ 33). On June 5, 1985, COMSAT offered Houseknecht and Swank an "Employees Incentive Benefits Program" if they would remain in their current positions until the COMSAT station at Roaring Creek was closed or transferred to A.T. & T. (Amended Complaint, ¶ 34). Under this arrangement, if Houseknecht and Swank stayed in their positions until December 31, 1986, they would have received a bonus equal to six months of their base salary. (Amended Complaint, ¶ 36).

On June 24, 1985, COMSAT distributed a memorandum that announced the existence of future positions at its Roaring Creek facility. (COMSAT's Exhibit B). The positions were to become available in connection with a contract between COMSAT and INTELSAT. The memorandum, which was subsequently read by Plaintiffs Houseknecht and Swank, stated in relevant part that "This contract [between COMSAT and INTELSAT] was negotiated for a five (5) year period and is currently scheduled to end on [sic] November, 1989." Swank relied exclusively upon this memorandum to reach the conclusion that he would be guaranteed employment for five years if he went to work under the COMSAT/INTELSAT contract. (Swank Deposition at 36). Houseknecht also received a copy of the memorandum. (Houseknecht Deposition at 48). Houseknecht states that he believed that he had job security until 1989 because installation of the equipment associated with the COMSAT/INTELSAT contract would make it too costly to remove the equipment once it was in place. (Houseknecht Deposition at 55).

Houseknecht decided to forego the Employees Incentive Benefits Program associated with the close or transfer of the Roaring Creek facility to A.T. & T., and accepted COMSAT's offer of a position under the COMSAT/INTELSAT contract. (Amended Complaint, ¶ 41). Swank initially opted for the Employees Incentive Benefits Program, but he changed his mind and decided to work under the COMSAT/INTELSAT contract. (Amended Complaint, ¶ 42). Both Houseknecht and Swank stated that they opted for work under the COMSAT/INTELSAT contract because they believed that it provided them with increased employment security. Houseknecht saw the COMSAT/INTELSAT contract before he started performing services and acknowledges that Article 7 of the contract specifically allows for its termination at the convenience of INTELSAT. (Houseknecht Deposition at 83). Swank has no recollection of reading the COMSAT/INTELSAT contract before performing services under it; however, he saw the contract lying in the operations area at COMSAT's Roaring Creek station sometime in June of 1985 and probably read it. (Swank Deposition at 39).

On June 27, 1986, Houseknecht and Swank received a memorandum from Silvius advising them that their positions were to be terminated because of a vote by the INTELSAT Board of Governors not to implement the COMSAT/INTELSAT contract. (Amended Complaint, ¶ 45). Swank was terminated from COMSAT on September 29, 1986, and Houseknecht was terminated from COMSAT on October 2, 1986, both without cause. (COMSAT's Exhibits E & F; Amended Complaint, ¶¶ 46–47). The amended complaint alleges that Houseknecht and Swank lost the bonuses that they would have received had they declined the positions under the COMSAT/INTELSAT contract. (Amended Complaint, ¶ 51). The amended complaint also alleges that Houseknecht was offered positions in Washington, D.C., and Clarksburg, Maryland, which he declined in order to work under the COMSAT/INTELSAT contract. (Amended Complaint, ¶ 49). Houseknecht and Swank argue that they likewise are entitled to recover damages from COMSAT under the alternative theories of breach of contract and promissory estoppel.

The Plaintiffs, Schleig, Houseknecht, and Swank, argue first that they had employment contracts with COMSAT for a specified term, and were not mere at-will employees. They argue that their term of employment was to run at least until November, 1989, when the COMSAT/INTELSAT contract was scheduled to expire, and that their termination by COMSAT prior to that time constituted a breach of their employment contract. COMSAT argues in its motion for summary judgment that the Plaintiffs were merely at-will employees and that they have failed to prove the existence of an employment contract with the degree of specificity required to overcome the at-will presumption.

### III. Discussion.

In considering a motion for summary judgment, we must ascertain, on the basis of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, whether or not

there are any genuine issues of material fact, and if none, whether the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Peterson v. Lehigh Valley District Council*, 676 F.2d 81, 84 (3d Cir.1982). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986); *Hankins v. Temple University*, 829 F.2d 437, 440 (3d Cir.1987); *Equimark Community Finance Co. v. C.I.T. Financial Services Corp.*, 812 F.2d 141, 144 (3d Cir.1987). If evidence is merely colorable or not significantly probative, summary judgment must be granted in favor of the movant. *Anderson*, 106 S.Ct. at 2511. When the record, taken as a whole, could not lead one to find for the nonmoving party, summary judgment must be entered in favor of the movant. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### A. Breach of Contract.

Pennsylvania law controls the disposition of this diversity action. *Erie Railroad Co. v. Tomkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). It is well settled that in the area of employment relations, Pennsylvania still adheres to the "at-will" rule. *Veno v. Meredith*, 357 Pa.Super. 85, 515 A.2d 571, 576 (1986); *Darlington v. General Electric*, 350 Pa.Super. 183, 504 A.2d 306, 310 (1986). The at-will rule has been recognized by Pennsylvania courts since at least 1881, and it provides that, absent a contract, employees may be discharged at any time, for any reason, or for no reason at all. *Darlington*, 504 A.2d at 309. The at-will rule is so well entrenched under Pennsylvania common law that the modification of an at-will relationship to one that cannot be severed except without "just cause" is such a substantial modification that a very clear statement of an intention so to modify the contract is required. *Veno*, 515 A.2d at 578 (citing *Martin v. Capitol Cities Media, Inc.*, 354 Pa.Super. 199, 511 A.2d 830 (1986)). The question then, for our purposes, is whether the con-

tractual agreements entered into between Schleig and COMSAT, and Houseknecht and Swank and COMSAT, clearly indicate that the parties intended to modify the at-will rule.

■ Schleig was told that COMSAT would have a contract with INTELSAT until November, 1989, and he inferred from this that he would have a position with COMSAT until at least November, 1989. (Amended Complaint, ¶ 10). Schleig concedes, however, that no one ever told him that he was guaranteed work for a five year period with COMSAT. (Schleig Deposition at 142). Schleig cites no other documents that show that COMSAT promised to employ him for a specific term of years. Accordingly, we conclude that there was no clear statement on the part of COMSAT that it intended to hire Schleig for a specified term of years. Rather, it is clear that COMSAT intended to hire Schleig in support of the COMSAT/INTELSAT contract and that Schleig received no assurances from COMSAT that it intended to use him in connection with any work other than that associated with the COMSAT/INTELSAT contract.

■ Similarly, Houseknecht and Swank are also unable to cite any clear statement to indicate that COMSAT intended to modify the at-will employment relationship which they had with COMSAT prior to 1985. In claiming that such a contract existed, they rely exclusively upon a June 24, 1985, COMSAT memorandum that referred to the COMSAT/INTELSAT contract, and which stated that it "is currently scheduled to end on [sic] November, 1989." This memorandum does not constitute a promise by COMSAT to Houseknecht and Swank that it intended to keep them as employees of COMSAT until November, 1989, no matter what.

### B. Contracts Implied in Fact.

■ The Plaintiffs suggest that, in the absence of an express contract for a specified term, the Court should find such a contract implied in fact. They argue that the intentions of the parties to the employ-

ment contract are demonstrative of the actual association. (Plaintiffs' Memorandum Opposing Motion for Summary Judgment at 7). The burden of proof for establishing an implied contract, however, is just as weighty for the Plaintiffs as the burden for establishing an express contract. *DiBonaventura v. Consolidated Rail Corp.*, 372 Pa.Super. 420, 539 A.2d 865, 867 (1988). The Plaintiffs must show from the circumstances surrounding the undertaking of employment that the parties did not intend the employment to be at-will. *Id.* The courts will not infer an intention to modify an at-will contract in the absence of a clear indication to do so by the parties. *Darlington v. General Electric*, 350 Pa.Super. 183, 504 A.2d 306, 313 (1986). Generally, the question of intent of the parties is a question for the jury. *DiBonaventura*, 539 A.2d at 868. If, however, the resolution of the issue is so clear that reasonable minds would not differ on its outcome, the court may decide. *Greene v. Oliver Realty, Inc.*, 363 Pa.Super. 534, 526 A.2d 1192, 1202 (1987); *cf. Flink v. Carlson*, 856 F.2d 44, 46 (8th Cir.1988) (in shaping federal law, fedral courts look to state law when question involves general law of contracts). In cases involving implied contracts of employment, the litigant will be able to reach the jury only if he can clearly show that he and the employer intended to form a contract. *DiBonaventura*, 539 A.2d at 868 (citing *Greene v. Oliver Realty, Inc.*, 363 Pa.Super. 534, 526 A.2d 1192, 1200 (1987)).

In *Clay v. Advanced Computer Applications, Inc.*, 370 Pa.Super. 497, 536 A.2d 1375, 1383 (1988) (en banc), the Pennsylvania Superior Court stated that it would not give legal significance to vague promises or to statements that reflect only the aspirations or hopes of the employer, whether written or spoken. In the case before us, J.R. Silvius, the Station Director of COMSAT at Roaring Creek, Pennsylvania, told Schleig that under an existing contract between COMSAT and INTELSAT, the position of technician was available and would be in effect until at least November, 1989. Schleig states that at the time Silvius made the statement, he thought that Silvius believed that this rep-

resentation was true. (Schleig Deposition at 77). Schleig also states, however, that Silvius must have had reason to believe otherwise because Article 7 of the COMSAT/INTELSAT contract provided that INTELSAT could cancel the contract at any time. (Schleig Deposition at 76). These two facts suggest that although Silvius believed the COMSAT/INTELSAT contract would not be cancelled before November, 1989, he was also aware of the possibility that it could be cancelled. Silvius's representations to Schleig at best reflected his expectation that the COMSAT/INTELSAT contract would not be cancelled before November, 1989. Silvius's statements provided no assurance that Schleig would be employed until November, 1989. Silvius's statements to Schleig do not convey an intention to establish an employment contract with Schleig in connection with anything other than the COMSAT/INTELSAT contract. We conclude that Silvius's statements to Schleig are vague and indefinite with respect to an employment contract with COMSAT for a specific period of time.

Like Schleig, Houseknecht and Swank also relied upon representations that the COMSAT/INTELSAT contract would be in effect until November, 1989. In their circumstances, however, the representations took the form of a memorandum distributed on June 24, 1985, which reported the existence of the COMSAT/INTELSAT contract and stated its duration. We find that the June 24, 1988, memorandum was no more than an announcement that positions under the COMSAT/INTELSAT contract were available. With respect to the formation of employment contracts, the memorandum is vague. The memorandum does not state that COMSAT was seeking employees to work for a five year term. The memorandum states that COMSAT had negotiated a contract with INTELSAT for five years and that positions were available in connection with that contract. There is no implied contract between Houseknecht and COMSAT, or · Swank and COMSAT on the basis of that memorandum.

The Plaintiffs also argue that an implied in fact contract modifying the at-will rule may arise when there is additional consideration provided in excess of essential employment duties. (Plaintiff's Memorandum Opposing Motion for Summary Judgment at 6). The term "consideration" is not used here as it is in the usual contractual context to signify a validation device. *Darlington v. General Electric*, 350 Pa.Super. 183, 504 A.2d 306, 314 (1986). Rather, the term is used as an interpretive device. *Id.* When "sufficient additional consideration" is present, courts may infer that the parties intended that the contract would not be terminable at will. *Id.*

■ Houseknecht and Swank maintain that they provided sufficient additional consideration to support an implied contract because they gave up bonus payments under the positions that they had at the time in order to accept the offers of employment with COMSAT under the COMSAT/INTELSAT contract. The fact that Houseknecht and Swank decided to forego other opportunities with COMSAT in order to work under the COMSAT/INTELSAT contract, however, is not a sufficient detriment to modify the at-will rule. The decisions of Houseknecht and Swank to accept employment under the COMSAT/INTELSAT contract were simply reasoned choices of new career goals. *See Darlington v. General Electric*, 350 Pa.Super. 183, 504 A.2d 306, 315 (1986) (employee's decision to forego opportunity at Honeywell, his former employer, to assume supervisory position with General Electric deemed not to be sufficient additional consideration to modify at-will employment contract). The fact that Houseknecht also gave up employment opportunities in Washington, D.C. and Clarksburg, Maryland, does not make his case any more compelling.

■ Schleig argues that his relocation from York, Pennsylvania, to Roaring Creek, Pennsylvania, as well as his termination of employment at Borg–Warner's plant in York, Pennsylvania, constitutes sufficient additional consideration to overcome the presumption of at-will employment. As a general proposition, additional consideration is sufficient when the new employee must undergo a substantial hardship such as moving his family to take the new position. *Darlington v. General Electric*, 350 Pa.Super. 183, 504 A.2d 306, 315 (1986) (citing *Lucacher v. Kerson*, 158 Pa. Super. 437, 443, 45 A.2d 245 (1946)). In *Lucacher*, which stated the proposition that relocation of one's family in order to take on new employment may constitute sufficient additional consideration to overcome the at-will presumption, the Court stated that it was also necessary to consider the circumstances surrounding the making of the contract. *Lucacher*, 158 Pa.Super. at 443, 45 A.2d at 245,

In *Lucacher*, the Plaintiff was a window trimmer and decorator who was "employed at the Gaston store in Somerville, New Jersey." *Lucacher v. Kerson*, 158 Pa.Super. 437, 439, 45 A.2d 245 (1946). The Plaintiff's family lived in New York City. *Id.* The Defendants were merchants engaged in the women's wear business, trading as "Kerson Brothers," and they placed an ad in a trade publication for a window trimmer, which they apparently needed for one of their stores near Philadelphia. *Id.* The Plaintiff answered the ad, negotiated with the Defendants, and was offered employment at the rate of $60.00 per week which he refused to accept because he felt that the compensation was not adequate to warrant moving his family to Philadelphia from New York. *Id.* Subsequently, the parties reopened negotiations and reached an oral agreement according to which the Plaintiff was to be permanently employed at a salary of $85.00 per week. *Id.* In reliance on the employment contract, the Plaintiff gave his former employer two weeks notice of his intention to terminate his then existing employment. *Id.* He then moved his family to Philadelphia. *Id.* at 440, 45 A.2d 245. He reported to work at the Defendant's store, worked there for three days, and on the fourth day he was summarily dismissed from his employment, paid $85.00, and told that his services were no longer desired. *Id.* at 440, 45 A.2d 245.

In *Lucacher*, the Court stated that by resigning his former employment and mov-

ing himself and his family from New York City to Philadelphia, and the other circumstances surrounding the making of the employment contract, a contract capable of enforcement came into existence. *Lucacher v. Kerson,* 158 Pa.Super. 437, 443, 45 A.2d 245 (1946). Although the Court in *Lucacher,* did not specify the "other circumstances surrounding the making of the contract," it was apparently referring to the negotiations surrounding the employment contract because the Court did not discuss any other circumstances. The Plaintiff in *Lucacher* bargained for a higher wage than he was originally offered specifically because the lower wage was not sufficient to make it worth it for him to move his family to Philadelphia. Unlike the circumstances in *Lucacher,* Schleig has presented no evidence that he bargained for a higher wage specifically to make it worthwhile for him to move his family from York, Pennsylvania, to Roaring Creek, Pennsylvania. Accordingly, we find that *Lucacher* does not control the case before us, and we conclude that Schleig has failed to provide sufficient additional consideration to take his employment with COMSAT out from under the employment at-will rule.

The Plaintiffs also suggest that because Schleig purchased a home at Roaring Creek, Pennsylvania, and gave up other employment, he has provided additional consideration to create an implied contract. (Plaintiffs' Memorandum Opposing Motion for Summary Judgment at 7). In *Clay, supra,* the Plaintiffs alleged that Defendant Advanced Computer hired them on a "regular full time basis for the purpose of long-term employment and career advancement." *Clay v. Advanced Computer Applications, Inc.,* 370 Pa.Super. 497, 536 A.2d 1375, 1382 (1988) (en banc). The Clays also alleged that they accepted the position offered and stopped looking for other employment because of representations made to them by Advanced Computer's agent, Mr. Gruenwald. *Id.* In addition, the Clays alleged that they purchased a new home after Mr. Gruenwald encouraged them to do so and told them that "there were no problems with job securi-

ty." *Id.* The Court in *Clay* concluded that "the Clays simply do not suggest that they 'brought to the employment so substantial a benefit, or incurred so detrimental a hardship in taking the job, that [they] should be accorded treatment any different from the typical at-will employee.'" *Id.* 536 A.2d at 1384 (citing *Veno v. Meredith,* 357 Pa.Super. 85, 515 A.2d 571 (1986)). Like the Plaintiffs in *Clay,* the fact that Schleig gave up other employment opportunities and purchased a house is not enough to make him anything other than a typical at-will employee.

Based upon the foregoing discussion, we conclude that Schleig, Houseknecht, and Swank were all merely at-will employees, that they had no employment contract with COMSAT, either express or implied, for a term of years or otherwise, and that they were all terminable at the will of COMSAT.

## C. *Promissory Estoppel.*

The Plaintiffs have contended, in the alternative, that they are entitled to relief against COMSAT under the equitable doctrine of promissory estoppel. (Plaintiffs' Memorandum Opposing Motion for Summary Judgment at 10). In its brief supporting the motion for summary judgment, COMSAT argues that there can be no promissory estoppel because it made no promise to the Plaintiffs of employment with COMSAT for a specified term, and that even if such a promise could be found, the Plaintiffs could not have reasonably relied upon it. (COMSAT's Memorandum in Support of its Motion for Summary Judgment at 28–30).

Pennsylvania law recognizes promissory estoppel in accordance with § 90 of the Restatement (Second) of Contracts which provides that

A promise which the promissor should reasonably expect to induce action or forebearance on the part of the promisee or a third person and which does induce action or forebearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

*Central Storage & Transfer Co. v. Kaplan,* 487 Pa. 485, 410 A.2d 292 (1979); *Murphy v. Burke,* 454 Pa. 391, 311 A.2d 904 (1973); *Murphy v. Bradley,* 113 Pa. Cmwlth. 387, 537 A.2d 917 (1988).

▮ Promissory estoppel is a contract validation device which Pennsylvania courts have used when consideration has not been given in exchange for a promise. *See Robert Mallery Lumber v. B. & F. Associates,* 294 Pa.Super. 503, 440 A.2d 579 (1982) (detrimental reliance supplies consideration necessary for contract formation). Promissory estoppel is unavailable as a basis for relief when a promise is absent. *Paul v. Lankenau Hospital,* 543 A.2d 1148, 1153 (Pa.Super. 1988) (citing *Banas v. Matthews International Corp.,* 348 Pa.Super. 464, 502 A.2d 637, 648 n. 12 (1985)). Reliance on the asserted promise must be justified, and if the employer has placed no limit on its freedom of action the promise is illusory. *Id.*

▮ We have already found that to the extent promises were made to the Plaintiffs in this case, they were made by COMSAT in support of the COMSAT/INTELSAT contract only. The Plaintiffs have presented insufficient evidence to show that they were promised employment with COMSAT regardless of the status of the COMSAT/INTELSAT contract. If, for example, the INTELSAT Board of Governors had not voted to cancel the contract, and COMSAT had then fired the Plaintiffs without cause, the Plaintiffs may well be able to make out a case under the theory of promissory estoppel. This situation, however, is not the case that is before us. The only promise which COMSAT made to the Plaintiffs was that they would have work under the COMSAT/INTELSAT contract. COMSAT kept that promise, but once the underlying COMSAT/INTELSAT contract was repudiated by INTELSAT, COMSAT no longer had any obligations to the Plaintiffs to keep them as employees. To the extent the Plaintiffs relied upon employment with COMSAT for a definite term independent of the COMSAT/INTELSAT contract, such reliance was based solely upon their subjective expectations and not upon any clear promise by COMSAT. Each Plaintiff's reliance upon his expectation of employment with COMSAT for a specific period of time was unjustified.