Lewis v. Gettysburg Diagnostic Imaging P.C.

C.P. of Adams County, no. 03-S-254.

*Joseph L. Hitchings,* for plaintiff.
*Michael J. Salmanson,* for defendant.

GEORGE, *J.,* May 26, 2004—This matter comes before the court on a motion for judgment on the pleadings filed by Gettysburg Diagnostic Imaging P.C. (GDI). For the reasons set forth below, the motion for judgment on the pleadings is denied.

In the spring of 2001, GDI and Dr. Joffre P. Lewis entered into discussions concerning Dr. Lewis' potential employment by GDI. At that time, Milford Diagnostic Imaging employed Dr. Lewis in the State of Delaware.[1] Apparently, the discussions led to correspondence dated June 30, 2001, wherein GDI offered Dr. Lewis a posi-

---

1. For a ruling on a motion for judgment on the pleadings, all of the opposing parties' allegations of fact must be viewed as true. *Otterson v. Jones,* 690 A.2d 1166 (Pa. Super. 1997). Accordingly, this factual background is derived from the allegations in Dr. Lewis' complaint and the admitted allegations in Dr. Lewis' reply to GDI's new matter.

tion in the corporation. Although no person at GDI signed the offer letter, Dr. Lewis claims to have accepted the offer of employment and returned and executed documents back to GDI. Dr. Lewis claims that he was informed that he would begin his employment with GDI on September 10, 2001.[2] Apparently, in reliance upon this information, Dr. Lewis appeared before the credentials committee of Gettysburg Hospital on July 26, 2001. At that time, Dr. Joseph Jones, a partner in GDI and a member of the credentials committee for Gettysburg Hospital, informed Dr. Lewis that he would receive temporary privileges at Gettysburg Hospital. Anticipating his approaching employment in Gettysburg, Dr. Lewis placed his Delaware home for sale and purchased a property in Hanover, Pennsylvania. The cordial relationship between the parties, however, began to deteriorate. Due to issues relative to Dr. Lewis' malpractice insurance, commencement of Dr. Lewis' employment was delayed. During the delay, various correspondence occurred between the parties and others. Among the correspondence were Dr. Lewis' references to GDI which indicated mistrust, disagreement and language which was less than flattering to GDI and its management. Included among the correspondence was Dr. Lewis' disclaimer of any

---

2. In paragraph 10 of his complaint, Dr. Lewis alleges a start date of September 1, 2001. However, in paragraph 14 of his complaint, Dr. Lewis alleges his start date to be September 10, 2001. The later date is consistent with GDI's answer which denies paragraph 10 of Dr. Lewis' complaint and alleges the tentative start date to be September 10, 2001. Since the distinction between September 1, 2001 and September 10, 2001, is not important to the resolution of the matter before this court, this court will treat paragraph 10 as a typographical error.

contract between the parties.[3] Various correspondence also included a letter from Dr. Lewis to the president of Gettysburg Hospital dated September 16, 2001. In that letter, Dr. Lewis advised that he had sought and obtained alternative employment. The final piece of correspondence included in the record is a letter from Dr. Jones to Dr. Lewis dated September 20, 2001, wherein Dr. Jones terminates negotiations concerning GDI's employment of Dr. Lewis.

The unfortunate history of the parties' relationship culminated on March 6, 2003, when Dr. Lewis instituted a suit against GDI for breach of contract.[4] GDI has moved for judgment on the pleadings advancing several alternative theories.

A number of the theories GDI advanced can be addressed summarily. Each of these theories assumes, for the sake of argument, that a contractual relationship existed between the parties. GDI argues that even assuming such a relationship, Dr. Lewis has, as a matter of law, failed to comply with a condition precedent to consum-

---

3. In an e-mail dated September 11, 2001, from Dr. Lewis to Dr. Jones, Dr. Lewis claims that he told a third party that: "I have no formalized contract with GDI . . . ." Later, in that same e-mail, when speaking of the potential for breach of contract, Dr. Lewis parenthetically claims: "there we go with that phantom contract again."

4. The initial complaint contained two separate causes of action and included GDI and the individual partners in that corporation as defendants. Count I of the original complaint alleged a breach of contract action while Count II alleged a claim of civil conspiracy. Count II of the complaint and the cause of action against the individual defendants was dismissed by opinion and order dated July 10, 2003, following the filing of preliminary objections by each of the defendants.

mation of the contract or, in the alternative, terminated the contractual relationship prior to any act of termination by GDI. GDI further argues that even assuming the contractual relationship remained intact, Dr. Lewis' actions provided "just cause" for his termination.

The granting of judgment on the pleadings is proper only where the pleadings establish that there are no material facts in dispute, thereby making a trial by jury unnecessary. *Pennsylvania Financial Responsibility Assigned Claims Plan v. English*, 541 Pa. 424, 429, 664 A.2d 84, 86 (1995). While each of the arguments advanced by GDI find support in the record and may be attractive to a jury, it is premature to reach conclusions in regard to those arguments as a matter of law. For instance, GDI urges that Dr. Lewis failed to provide the necessary information to secure medical malpractice coverage which was a condition precedent to employment. Clearly, the document referenced as a contract includes language that employment was "contingent upon [Dr. Lewis'] approval for malpractice coverage." As a matter of law, lack of such approval, if factually established, may be fatal to Dr. Lewis' claim. *Franklin Interiors v. Wall of Fame Management Co. Inc.*, 510 Pa. 597, 601, 511 A.2d 761, 762 (1986) (noting if a condition precedent to a contract is unsatisfied, no binding contract exists). However, at this stage of the litigation, those factual issues have not been developed.[5] Unless the factual disputes are eliminated, resolution of this issue re-

---

5. In an exhibit attached to the answer and new matter of GDI, Dr. Lewis claims to have obtained "insurance with MIXX . . . ." See GDI's answer and new matter, exhibit 2.

mains for a jury. See generally, *English,* 541 Pa. at 428-29, 664 A.2d at 86.

Similarly, I am unwilling to rule, as a matter of law, that Dr. Lewis was the first to terminate the relationship between GDI and himself. Although Dr. Lewis' September 16, 2001 letter to Gettysburg Hospital referencing alternative employment is intriguing, the effect of that letter is for a fact-finder. See generally, *id.* It is noteworthy that the September 16, 2001 letter is not clear notice from one party to another as to intent but rather, Dr. Lewis wrote it to an entity which is not a party to the alleged contract. As such, the relief GDI sought based upon this correspondence is not definitive as a matter of law.

GDI's related argument that Dr. Lewis' actions justified termination is also a matter for the jury. The determination on what constitutes just cause for termination of an employment relationship is a matter to be determined by the fact-finder. *Wilson v. Benjamin,* 332 Pa. Super. 211, 481 A.2d 328 (1984) (discussing role of fact-finder at trial). While it is certainly reasonable to conclude that Dr. Lewis' actions throughout the parties' relationship support termination, it is similarly possible that Dr. Lewis' actions may be viewed as appropriate responses to GDI once the facts are fully developed. Accordingly, it is not clear to me that a trial would be a fruitless exercise. See generally, *Otterson,* 690 A.2d at 1166.

Having preliminarily resolved a number of the issues GDI raised, it is now appropriate to address the more fundamental argument advanced by the motion for judgment on the pleadings. The final argument raised by

GDI's motion strikes at the heart of the relationship between the parties. Specifically, GDI asserts that Dr. Lewis cannot legally state a claim for breach of contract since the employment relationship between the parties was "at-will." This argument merits meaningful discussion.

The presumption under Pennsylvania law is that an employment relationship is generally considered to be "at-will" and, absent a contract, may be terminated by either party at any time, for any reason or for no reason. See *Darlington v. General Electric,* 350 Pa. Super. 183, 188, 504 A.2d 306, 309 (1986). Because of this presumption, there is no common-law cause of action for termination of an "at-will" employment relationship. See *Scott v. Extracorporeal Inc.,* 376 Pa. Super. 90, 545 A.2d 334 (1988). An employee, however, can defeat the "at-will" presumption and establish a cause of action for breach of contract. See generally, *Robertson v. Atlantic Richfield Petroleum,* 371 Pa. Super. 49, 537 A.2d 814 (1987). Pennsylvania courts have recognized three circumstances sufficient to rebut the presumption of at-will employment as follows: (1) there is sufficient additional consideration provided by the employee to the employer which infers that the parties intended that the employment relationship not be terminable at-will; (2) there is an employment agreement for a definite duration; (3) there is an employment agreement specifying that the employee will be discharged for just cause only; or (4) an applicable recognized public policy exception exists.[6] *Robertson,*

---

6. Dr. Lewis does not advance claims that the parties specifically contracted that employment could only be terminated for cause or that public policy considerations overcome the presumption of at-will employment. An independent review of the pleadings in this matter re-

371 Pa. Super. at 58, 537 A.2d at 819. The burden of overcoming the presumption of at-will employment "rests squarely" upon the employee. *Rutherfoord v. Presbyterian-University Hospital,* 417 Pa. Super. 316, 323, 612 A.2d 500, 503 (1992).

Dr. Lewis bases his cause of action upon the June 30, 2001 offer which he claims to have accepted. He argues that this meeting of minds between the parties is definitive in establishing an employment relationship for a determinate amount of time. I disagree.

A careful review of the June 30, 2001 document reveals that it specifies a salary for the first year of employment to be paid in 12 equal monthly installments. The document further provides an annual salary for the second year of employment "[i]f we agree to continue the relationship." There are additional references throughout the document to benefits and partnership opportunities. A number of the benefit provisions are couched in language which calculates the application of a benefit over an annual period of time.[7] Dr. Lewis relies upon this language in urging that it conclusively established a definitive time of employment.

The essence of contract interpretation is fulfilling the reasonable expectations of the parties. See *Darlington,*

---

veals that neither such exception to the presumption of at-will employment is applicable instantly. I conclude, therefore, that neither theory would provide a basis to avoid the granting of judgment on the pleadings in favor of GDI.

7. An example of such language is found in paragraph four of the document which reads as follows: "*Paid time off.* You will be entitled to eight weeks paid time off for vacation, sick time and seminars, etc. . . . ."

350 Pa. Super. at 196, 504 A.2d at 312 (citing *Magnan v. Anaconda Industries Inc.,* 193 Conn. 558, 479 A.2d 781 (1984)). Although experience tells us that an employee and an employer can effectively enter a contract for a specific duration, definitiveness in doing so is required. "Courts are highly reluctant to make definite that which the parties themselves failed to do." *Darlington,* 350 Pa. Super. at 196-97, 504 A.2d at 312. An employment contract for a broad, unspecified duration of time is insufficient. *Murphy v. Publicker Industries Inc.,* 357 Pa. Super. 409, 417, 516 A.2d 47, 51 (1986). Moreover, salary computed over a specific time period, such as, annually, does not establish that the contract is intended for that period of time. *Booth v. McDonnell Douglas Truck Services Inc.,* 401 Pa. Super. 234, 241, 585 A.2d 24, 27 (1991). Where a party attempts to modify an at-will relationship to one that cannot be severed absent "just cause," an unambiguous statement of intention is required. See *Veno v. Meredith,* 357 Pa. Super. 85, 101, 515 A.2d 571, 579 (1986) (concluding an employer's statements of hope that an employee will remain in his employ until retirement is insufficient). I find nothing in the June 30, 2001 document that evidences such a clear intention to justify a substantial modification to the presumption of at-will employment.[8] Accordingly, as a mat-

---

8. In fact, the June 30, 2001 document contains references to the contrary. For instance, a noncompetition provision of the document contemplates termination of the relationship by either party without providing any notice requirements or other time periods. Additional paragraphs of the document call for the allocation of certain expenses if the employment relationship is terminated within the first two years of employment. See Dr. Lewis' complaint, exhibit A, ¶¶3, 9. Implicit in the language of these paragraphs is recognition that the parties con-

ter of law, Dr. Lewis has not overcome the presumption of at-will employment based upon the theory that the parties entered a contract for a specific duration.

Dr. Lewis also maintains that there was sufficient additional consideration present which, by itself, is sufficient to overcome the at-will presumption. In his complaint, Dr. Lewis contends that in reliance upon his employment with GDI, he moved his family to a home he purchased in Hanover, Pennsylvania, after selling his previous residence in Delaware. Also, in reliance with his employment with GDI, Dr. Lewis alleges that he purchased a tail policy for malpractice insurance[9] at cost to him. Finally, he claims to have lost vacation benefits from his previous employer due to the change in employment.[10]

A classic definition of what constitutes sufficient additional consideration was set forth in *Darlington* when the court remarked:

"Thus, a court will find 'additional consideration' when an employee affords his employer a substantial benefit

templated a possibility of a termination in the relationship at the will of either party.

9. The definition of tail policy is not clear from a reading of the pleadings, however, it appears that a tail policy is a malpractice insurance policy which provides coverage for a medical doctor for any claims made after employment terminates, but arose during employment.

10. Dr. Lewis also alleges that he provided additional consideration consisting of expenses relating to him accepting employment in Carlisle, Pennsylvania, and an alleged financial loss involved in the sale of his Hanover home and the purchase of a Carlisle home. These items, however, are more correctly described as damages and cannot possibly have been contemplated by the parties as additional considerations from an employee to an employer in reliance upon employment. See generally, *Darlington,* cited above.

other than the services which the employee is hired to perform, or when the employee undergoes a substantial hardship other than the services which he is hired to perform. 'If the circumstances are such that a termination of the relation by one party will result in a great hardship or loss to the other, as they must have known it would when they made the contract, this is a fact of great weight in inducing a holding that the parties agreed upon a special period.' " *Id.* at 201-202, 504 A.2d at 315 (citing 3 A. Corbin, *Corbin on Contracts* §684 (1960)).

In *Lucacher v. Kerson,* 158 Pa. Super. 437, 45 A.2d 245 (1946), an employee was promised permanent employment in his new job. After moving his family to Philadelphia from New York, the employee was abruptly discharged from his new position after three days into his employment. Under these circumstances, the Pennsylvania Superior Court found the presence of additional consideration. Similarly, in *Cashdollar v. Mercy Hospital of Pittsburgh,* 406 Pa. Super. 606, 595 A.2d 70 (1991), an employee surrendered secure employment at a position where he had been employed for four years and moved his pregnant wife and two-year-old daughter from Fairfax, Virginia, to Pittsburgh, Pennsylvania, in reliance upon employment. The Superior Court found these hardships to be sufficient additional consideration to rebut the at-will presumption. While it is true that no additional consideration exists where an employee has suffered detriments that are "commensurate with those incurred by all manner of salaried professionals," see *Veno,* 357 Pa. Super. 85, 102, 515 A.2d 571, 580, our appellate courts have found circumstances similar to those Dr. Lewis pled to be sufficient additional consideration. Al-

though, in appropriate cases, the court may determine as a matter of law whether the threshold of sufficient additional consideration has been met to rebut the presumption of at-will employment, see *Darlington,* cited above; *Veno,* cited above, whether an employee has given additional consideration sufficient to rebut the presumption of at-will employment is generally a question of fact for the jury. *Murphy,* 357 Pa. Super. at 417, 516 A.2d at 51. In light of the Superior Court's decision in *Cashdollar* and *Lucacher,* it appears possible that a jury might reasonably interpret the allegations Dr. Lewis pled in a manner so as to conclude that Dr. Lewis has rebutted the at-will presumption. Clearly, reasonable minds might differ in weighing this issue. See *Booth,* cited above; *Greene v. Oliver Realty Inc.,* 363 Pa. Super. 534, 526 A.2d 1192 (1987).

For the foregoing reasons, the attached order is entered.[11]

## ORDER

And now, May 26, 2004, the defendant's motion for judgment on the pleadings is denied.

---

11. This opinion does not preclude future motions for summary judgment once the factual circumstances of this litigation are developed. This decision is based solely on the pleadings as they currently present. *English,* 541 Pa. at 429, 664 A.2d at 86.