585 A.2d 24

**Harry J. BOOTH, Appellant,**

v.

**McDONNELL DOUGLAS TRUCK SERVICES, INC., Appellee.**

Superior Court of Pennsylvania.

Argued Nov. 27, 1990.

Filed Jan. 14, 1991.

Roger J. Harrington, Philadelphia, for appellant.

John M. Elliott, Philadelphia, for appellee.

Before OLSZEWSKI, TAMILIA and HESTER, JJ.

OLSZEWSKI, Judge:

Presented herein is an appeal from an order of the Court of Common Pleas of Philadelphia County granting the motion of McDonnell Douglas Truck Services, Inc. (MDTS), defendant below, for partial summary judgment. The trial court dismissed three counts of Harry Booth's complaint against MDTS.

The present dispute arose out of an employment relationship between Booth and MDTS whereby Booth served as a National Account Executive for MDTS. Booth essentially provided customer contact for MDTS for large accounts which leased commercial truck fleets from MDTS. In 1984, a dispute arose between Booth and the management of MDTS as to the amount of commissions due and owing Booth as a result of his services. In January 1985, Booth was instructed by MDTS to no longer contact any MDTS customers. On February 6, 1985, Booth was terminated by MDTS.

Booth filed a complaint against MDTS alleging, in essence: (I) MDTS still owes Booth a substantial balance of the commissions earned prior to his termination; (II) Booth and MDTS had contracted for a year's employment, and as a consequence, Booth is entitled to a commission for all renewals of the accounts he handled occurring in 1985; (III) as Booth and MDTS had contracted for a year's employment, Booth is entitled to the balance of his 1985 salary; (IV) MDTS's termination of Booth violates public policy and/or was done with the specific intent to harm Booth, giving rise to a cause of action for wrongful discharge; and (V) MDTS improperly set off amounts from Booth's advance account against the portion of the commissions MDTS paid Booth.

Booth's action survived preliminary objections by MDTS and a prior motion for summary judgment. Following our Supreme Court's opinion in Paul v. Lankenau Hospital, 524 Pa. 90, 569 A.2d 346 (1990), MDTS moved for partial summary judgment seeking dismissal of counts II through IV of Booth's complaint, relating to the breach of the alleged yearly employment contract and wrongful discharge. The motion was granted by the trial court, and an order dismissing those counts was entered on June 7, 1990. This timely appeal followed.

Booth alleges three errors by the trial court. First, Booth claims that there was a disputed issue of material fact as to the existence of a contract for a yearly term of

employment which must be submitted to a jury, rendering summary judgment as to counts II and III improper. Booth also contends that his termination by MDTS violated public policy, because MDTS discharged Booth to avoid paying Booth the amount of commissions Booth believes is owed him. Alternatively, Booth argues that the termination was done with specific intent to harm, as it was done to prevent payment of those commissions. Finding no merit to these allegations of error, we affirm.[1]

## I.

Booth appeals an order dismissing three counts of a five-count complaint. As a general matter, an order dismissing some, but not all, counts of a multi-count complaint is considered interlocutory and so not appealable. *Praisner v. Stocker*, 313 Pa.Super. 332, 336, 459 A.2d 1255, 1258 (1983) (citations omitted). Exceptions do exist:

> Where the dismissal of one count or several counts of a multi-count complaint has the effect of precluding the plaintiff from pursuing the merits of separate and distinct causes of action, the order sustaining preliminary objections is then final, not interlocutory, with respect to those causes of action dismissed.... The plaintiff is "out of court" with respect thereto.... This is to be distinguished from the situation in which separate counts have been used to state alternate theories of recovery on the same cause of action.

*Cloverleaf Development, Inc. v. Horizon Financial F.A.*, 347 Pa.Super. 75, 79–83, 500 A.2d 163, 166–167 (1985) (citations omitted). The order at issue here precludes Booth from pursuing his cause of action for breach of the employment contract he alleges existed for 1985, or in the alterna-

---

1. We note that Booth's brief violates Pa.R.A.P. 2131 by constant references to MDTS as the appellee. Further, Booth's statement of the case contains argument. MDTS' position is variously characterized as "bogus," "completely false," and a "complete fabrication." This is a violation of Pa.R.A.P. 2117(b). This Court does not condone violations of its procedural rules. Nonetheless, in the interests of justice we will not quash this appeal pursuant to Pa.R.A.P. 2101, as is our prerogative under Pa.R.A.P. 105.

tive for wrongful discharge. The remaining counts address Booth's claims for breach of the employment contract in 1984. The dismissed counts envision a recovery for prospective damages Booth suffered when he was terminated. The remaining counts envision a recovery for commissions Booth claims have been earned but remain unpaid by MDTS.[2] The dismissed counts are based on a separate cause of action from the remaining counts. As stated by this Court in *Praisner:*

> The appealability of the summary judgments entered in this case becomes readily apparent if we understand the basis upon which separate causes of action may be joined in the same complaint. Pa.R.C.P. 1044(a) permits, but does not require, the joinder of causes of action which arise out of the same transaction or occurrence or series of transactions or occurrences. If appellant had not joined his ... causes of action in one complaint but had used ... separate complaints ... there could be no doubt about the appealability of judgments entered against him.

*Praisner, supra,* 313 Pa.Superior Ct. at 339, 459 A.2d at 1259 (footnote omitted). Accordingly, as it dismisses causes of action separate from those that remain, we hold the order granting partial summary judgment to possess sufficient aspects of finality to be properly appealable.

## II.

We now turn to the order in question, noting that the burden on a party seeking summary judgment is heavy indeed. Summary judgment is only proper where no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Pa.R.Civ.P. 1035(b), 42 Pa.C.S.A. The movant must demonstrate that no material factual issues exist to secure summary judgment. *Thomp-*

**2.** We recognize that the difference between separate causes of action and alternative theories of recovery on the same cause of action is often indistinct. We do not mean to imply that separate counts of a complaint *must* contemplate recovery of different damages to constitute separate causes of action. Nonetheless, the fact that the counts in the complaint at issue here do address separate items of damages is an important factor in the determination.

*son Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 202–206, 412 A.2d 466, 468–469 (1979). An appellate court must examine the record in the light most favorable to the non-moving party, who is entitled to the benefit of all reasonable inferences therefrom. *Pennsylvania Gas & Water, Co. v. Nenna & Frain, Inc.*, 320 Pa.Super. 291, 297, 467 A.2d 330, 333 (1983) (citation omitted). All doubts as to the existence of a genuine issue of material fact must be resolved against the movant, as summary judgment is proper only in the clearest of cases. *Thompson Coal, supra* at 202–206, 412 A.2d at 468–469. Still, a trial court's grant of summary judgment will be reversed only for an error of law or a clear abuse of discretion. *Incollingo v. Maurer*, 394 Pa.Super. 352, 362, 575 A.2d 939, 944 (1990) (citations omitted). With these principles in mind, we examine Booth's arguments.

### III.

■ The dismissal of counts II and III of Booth's complaint turned upon the trial court's determination that, as a matter of law, Booth could not prove the existence of an employment contract of a year's duration. We agree. Booth's deposition indicates that he believed that his employment was on a year-to-year basis. (Booth Deposition, 1/30/87 [B.D.] at 53.) Booth based this belief upon the following facts: the position carried an annual salary and he would be, and was, evaluated annually (B.D. at 53–54.) Booth also received a memorandum in 1981 describing benefits on an annual basis. Nonetheless, Booth admitted that he was aware that he would continue in MDTS's employ "[a]s long as they felt that I was doing a satisfactory job." (B.D. at 54.) Further, Booth believed he was free to leave MDTS at any time:

Q. ... Harry could say, 'I don't like this company and I'm leaving?'

A. Yes.[3]

3. Question by counsel for MDTS. Answer by Booth.

(B.D. at 57.) We agree with the trial court that it is clear that Booth understood his employment to be terminable at-will, despite his protestations to the contrary.

▮▮▮ Booth argues that he is entitled to a jury determination whether the evaluations, salary, and memo give rise to an implied yearly term of employment, relying on *Greene v. Oliver Realty, Inc.*, 363 Pa.Super. 534, 526 A.2d 1192 (1987). It is clear that the legal presumption that employment is at-will can be rebutted only by clear evidence that the parties intended a definite term of employment. *DiBonaventura v. Consolidated Rail Corp.*, 372 Pa.Super. 420, 424–425, 539 A.2d 865, 868 (1988). No such evidence was presented here. Salary computed per a specific time period, such as annually, does not evidence an intent that the contract is for that period. *Tishock v. Tohickon Valley Joint School Bd.*, 181 Pa.Super. 278, 280–281, 124 A.2d 148, 149 (1956). It would be inconsistent to give the 1981 memorandum describing benefits more weight than the description of Booth's salary. As the trial court aptly stated: "It is common knowledge that employees throughout industry and businesses are evaluated annually and that such practices alone could not support a finding of a definite term of one year." (Trial court opinion at 4).[4] Were such evidence sufficient to overcome the presumption of at-will employment, there would be nothing left of it.

Booth's reliance on *Greene* is misplaced; a party is entitled to a jury determination "unless it is so clear that reasonable minds could not possibly differ." *Greene, supra*, 363 Pa.Superior Ct. at 555, 526 A.2d at 1202. As MDTS states, to adopt Booth's position would mean "the summary judgment procedure ... can never be used in a case in which a plaintiff alleges existence of a contract of employment for a specific and definite time." (Appellee's brief at 10.) Such is not Pennsylvania law. *See,* among

4. We note that even were we to accept Booth's contention that a year-to-year contract existed, he has pointed us to no indication that such a contract was renewed for the year 1985. In fact, this dispute, which arose in 1984, would seem to be a clear indicator that MDTS would not renew Booth's contract if one ever existed.

others, *Darlington v. General Electric*, 350 Pa.Super. 183, 504 A.2d 306 (1986); *Veno v. Meredith*, 357 Pa.Super. 85, 515 A.2d 571 (1986); *Betts v. Stroehmann Brothers*, 355 Pa.Super. 195, 512 A.2d 1280 (1986) [all cases where the court, rather than the jury, decided this issue].

As no contract of employment for the calendar year 1985 between Booth and MDTS has been shown, summary judgment as to counts II and III was proper.

## IV.

■ Booth's complaint alleged an alternative basis for recovery in count IV, wrongful termination of at-will employment. As we agree that Booth's employment with MDTS was at-will, we must examine whether a cause of action for wrongful discharge will lie under Pennsylvania law due to MDTS's termination of Booth's employment. It is clear that where employment is at-will, the relationship can be ended by either party for "any reason or no reason." *Geary v. United States Steel*, 456 Pa. 171, 174, 319 A.2d 174, 176 (1974). Nonetheless, if the termination of an employee violates a clear mandate of public policy, or is done with the specific intent to harm the employee, a cause of action will lie. *Id.* Booth claims that his termination by MDTS fits both or either exception. We disagree.

The public policy claimed to have been violated must go to the heart of a citizen's rights, duties, and responsibilities, or the discharge is not wrongful. *McGonagle v. Union Fidelity Corp.*, 383 Pa.Super. 223, 237, 556 A.2d 878, 885 (1989) *alloc. denied*, 575 A.2d 115 (1990). An employer must intrude into an area of the employee's life in which the employer has no legitimate interest for the discharge to be actionable. *Geary, supra*, 456 Pa. at 184, 319 A.2d at 180.

■ Booth presents a two-fold public policy argument which can be summarized as follows: The Pennsylvania Constitution contains clauses prohibiting laws which impair the obligations of contracts (*citing* Pa.Const. Art. I § 17). The Wage Payment and Collection Law provides statutory

protection to the compensation due employees under their contract with the employer (*citing* 43 P.S. § 260.1 *et seq.*). Clearly, public policy protects contract rights; as MDTS discharged Booth to prevent him from obtaining his rights under the contract, public policy has been violated. (Appellant's brief at 25–34.)

First, we note that no law has been enacted which impairs Booth's contract rights. This is a dispute between private parties; as no allegation of state action has been made, the constitutional provision cited by Booth does not apply. Further, while the statute cited by Booth applies to protect the commissions earned by Booth prior to his discharge, Booth has not told us how his discharge prevents him from enforcing this contract. In point of fact, the two counts remaining in the case are proof that Booth is quite able to pursue his contractual cause of action for the commissions he claims are due him. We can agree that individuals have a public policy right to enforce their contracts. We do not understand how such a right is infringed by Booth's discharge by MDTS.

MDTS disputes the amount of commissions owed Booth; the compensation due an employee is clearly an area where the employer has a legitimate interest, and we find no violation of public policy here. Booth asks: "[h]ow can public policy permit the employer to fire the employee for insisting on pay as promised?" (Appellant's brief at 34.) It is sufficient to reply that the law allows an employer to discharge an at-will employee for any reason or no reason at all. MDTS's actions may be regrettable; they are not actionable.

■ Alternatively, Booth argues that MDTS terminated him with a specific intent to harm him, thereby giving rise to a cause of action for wrongful discharge, *citing Tourville v. Inter–Ocean Insurance Co.*, 353 Pa.Super. 53, 508 A.2d 1263 (1986), *alloc. denied*, 514 Pa. 619, 521 A.2d 933 (1987), as authority that this exception to at-will employment rule exists. MDTS responds by arguing that no such action will lie under Pennsylvania law. We agree that a

termination by an employer with the specific intent to harm the employee gives rise to a cause of action for wrongful discharge; but we hold that Booth has not made out a case of termination with specific intent to harm.

The substance of Booth's argument is that MDTS terminated him so as to prevent him from receiving the commissions he claims are due and owing. Booth conveniently overlooks the fact that the amount of the commissions is disputed by MDTS. Viewed from MDTS's side of the action, Booth was terminated for insisting on receiving more than was owed him.

Booth cites *Mudd v. Hoffman Homes for Youth, Inc.*, 374 Pa.Super. 522, 543 A.2d 1092 (1988), as authority that termination to prevent the employee from receiving economic benefits is actionable. We find it to be distinguishable. *Mudd* allowed a cause of action for wrongful discharge where plaintiff alleged that the firing was done to prevent her pension benefits from vesting. In *Mudd* there was no question that plaintiff would be entitled to the pension benefits. Here, the amount which Booth claims is due is disputed. There is a substantial question as to the economic benefit due Booth, rendering *Mudd* inapposite.

Again, we fail to see how the discharge of Booth by MDTS prevents him from attaining what he claims is due him. The remaining counts of his complaint will be heard as to whether or not Booth will recover anything. The termination of Booth by MDTS in no way prevents him from maintaining that action. At most, Booth can claim that his termination by MDTS financially harms him because he will no longer earn any commissions or salary from MDTS. That type of harm is not actionable.

To adopt Booth's position would mean that any time an employee is discharged due to a dispute over compensation due him, the employer would be liable because it asserted its position. It is true that Booth has a right to attempt to enforce the contract as he sees it. It is just as true that MDTS has right to resist what it views to be overreaching by Booth. MDTS has another right: to discharge Booth, an

at-will employee, for no reason or any reason. We refuse to hold that an employer who exercises that right because of a dispute over compensation due the employee is liable for wrongful discharge.

## Conclusion

In summary, we find that the trial court properly decided that Booth has failed to rebut the presumption of at-will employment to show a contract of a year's duration. Not all cases require a jury determination of this issue. The trial court properly dismissed counts II and III of Booth's complaint. Further, Booth has failed to demonstrate that MDTS terminated him in violation of public policy or with a specific intent to harm him. Therefore, the dismissal of count IV of Booth's complaint was also proper.

Order affirmed.