612 A.2d 500

**Bruce B. RUTHERFOORD, Appellant,**

**v.**

**PRESBYTERIAN–UNIVERSITY HOSPITAL, Medical and Health Care Division of the University of Pittsburgh, and Ronald J. Forsythe, Appellees.**

Superior Court of Pennsylvania.

Argued April 23, 1992.

Filed July 14, 1992.

318

Bruce S. Gelman, Pittsburgh, for appellant.

Martha H. Munsch, Pittsburgh, for appellees.

Before TAMILIA, HUDOCK and HESTER, JJ.

HUDOCK, Judge.

Bruce Rutherfoord (Appellant) appeals from the grant of preliminary objections and, thereafter, summary judgment in favor of Appellees in a wrongful discharge case. We affirm.

The facts and procedural history may be summarized as follows: Appellant began employment with Appellee Presbyterian–University Hospital (Hospital), a private non-profit organization, in 1974 and advanced to the position of Security Systems Operator by 1985. In this latter position, Appellant was assigned various duties including responsibilities as a locksmith for the Hospital, maintenance of shuttle bus vehicles and responsibility for the Hospital's telecommunication system of the Safety, Security and Parking Department (the Department). At all times pertinent to the proceedings, the Medical and Health Care Division of the University of Pittsburgh (MHCD) and the Hospital were parties to a management services agreement pursuant to which MHCD was responsible for, among other things, the day-to-day operations of the Department. It is undisputed that MHCD was acting as the lawful agent of the Hospital. Appellee Ronald Forsythe (Forsythe) is a Vice President of MHCD and the individual responsible for carrying out MHCD's management services contract with the Hospital as it pertained to, among other things, the Department.

In the Spring of 1988, a senior official of MHCD received a report from employees of the Hospital's Purchasing De-

partment indicating that Appellant had attempted to use his position with the Hospital to try to gain personal favors from a prospective vendor. The report concerning Appellant's interaction with the vendor reinforced senior management's serious concerns about Appellant's reliability, trustworthiness, and loyalty.[1] In April 1988, Appellant was informed by the new director of the Department that he was being relieved of his responsibilities as a locksmith and was required to return his keys. Appellant was told that his name had surfaced in an investigation by a Vice President of MHCD and that his duties as locksmith were removed at the direction of Forsythe.

In May 1988, Appellant met with the Director of Human Resources at the Hospital in order to file a grievance pursuant to the regulations in Hospital's Policy and Procedure Manual. It is alleged by Appellant that Forsythe precluded the processing of his grievance under these procedures. Subsequently, Appellant's job duties were further restricted and he was denied use of Hospital vehicles in the performance of his duties. Appellant's attempts to once again use the grievance procedure established by the Hospital were allegedly frustrated by Forsythe and MHCD. In June 1988, Appellant was called to Forsythe's office at which time Forsythe informed Appellant that his employment with the Hospital was terminated immediately and that his further access to the Hospital was prohibited. Upon inquiry, Appellant was informed that he had no right to file a grievance concerning his termination.

1. Those concerns were initially raised the prior year as a result of an investigation into the activities of the Department. That investigation initially focused on allegations that gambling operations were being conducted out of the Department. The investigation also dealt with further allegations that other unethical, unorthodox, dishonest and/or unprofessional business practices were occurring in the Department under the direction of the prior head of the Department. Because Appellees believed that Appellant was in a position to have had information pertinent to matters under investigation in early 1987, Appellant was asked to cooperate. Although Appellant was interviewed by an attorney, he refused to interview with another person conducting the investigation.

In August 1989, Appellant filed a five-count complaint in trespass and assumpsit against Appellees. In the complaint, Appellant alleged that he had been wrongfully and negligently discharged from his employment with the Hospital (Counts I and V), that the Appellees had defamed him (Count II), had intentionally interfered with his employment relationship with the Hospital (Count III), and had conspired to demote and discharge him (Count IV). On October 13, 1989, the trial court sustained the Appellees' preliminary objections in the nature of a demurrer as to Counts IV and V, and the Hospital's preliminary objection in the nature of a demurrer as to Count III. The trial court also sustained the Appellees' preliminary objection in the nature of a motion for a more specific pleading as to Count II and gave Appellant leave to amend Count II, which he did.

Following the issuance of this order, the Appellees timely filed their answer and new matter and the parties engaged in discovery as to the following remaining claims: (i) the claim in Count I that Appellant was wrongfully discharged in breach of an implied contract of employment; (ii) the claim in Count I that he was wrongfully discharged with specific intent to harm him; (iii) the claim in amended Count II that he was defamed; and (iv) the claim in Count III that MHCD and Forsythe intentionally interfered with his employment relationship with the Hospital. Upon motion of the Appellees, and after submission of briefs and oral argument, the trial court entered summary judgment against Appellant as to these remaining claims. Appellant then filed the present appeal from both orders below, claiming that the trial court erred in granting the Appellees' preliminary objections and summary judgment.

Initially, we set forth our standards of review with regard to the grant of preliminary objections and the grant of summary judgment. For the sake of simplicity, we will thereafter discuss the propriety of the trial court's particular action as to each count of Appellant's complaint.

A preliminary objection in the nature of a demurrer admits every well-pleaded fact and all inferences reason-

ably deducible therefrom; it tests the legal sufficiency of the challenged complaint and will be sustained only in those cases where the pleader has clearly failed to state a claim for which relief may be granted. If there is any doubt as to whether a claim for relief had been stated, the trial court should resolve it in favor of overruling the demurrer. *Creeger Brick and Bldg. Supply Inc. v. Mid–State Bank and Trust Co., SEDA*, 385 Pa.Super. 30, 560 A.2d 151 (1989) (citations omitted).

Rule 1035 of the Pennsylvania Rules of Civil Procedure provides that summary judgment is to be entered only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Pa.R.C.P. 1035(b), 42 Pa.C.S. (Purdon 1987). In deciding whether the moving party had met this burden, the court must examine the record in the light most favorable to the moving party. *Giannini v. Carden*, 286 Pa.Super. 450, 429 A.2d 24 (1981). The court's responsibility is merely to determine whether such an issue of material fact exists; the court does not resolve the issue on its merits. Moreover, the court should not enter summary judgment unless the case is free from doubt. *Weiss v. Keystone Mack Sales, Inc.*, 310 Pa.Super. 425, 456 A.2d 1009 (1983).

Appellant first claims that the trial court erred in granting Appellees' motion for summary judgment with regard to Count I of his complaint because a genuine issue of material fact existed as to whether the Hospital's Policy and Procedure Manual (Manual) modified the at-will status of Appellant's employment and as to the Hospital's intentions in discharging Appellant. We do not agree.

The appellate courts of Pennsylvania have provided a significant body of law analyzing various issues relating to termination of employment, and, in particular, issues related to the application of the at-will employment doctrine. From these cases, certain principles or rules of law have become well-settled. First and foremost is the principle that, absent a valid contract providing to the contrary or

other recognized exception, "employees may be discharged at any time, for any reason, or for no reason at all." *Darlington v. General Electric*, 350 Pa.Super. 183, 188, 504 A.2d 306, 309 (1986) (citations omitted); *see also, Geary v. United States Steel Corp.*, 456 Pa. 171, 175, 319 A.2d 174, 176 (1974) ("[a]bsent a statutory or contractual provision to the contrary, the law has taken for granted the power of either party to terminate an employment relationship for any or no reason."). Moreover, because the at-will doctrine is a presumption, the burden of proving that one is not employed at-will rests squarely upon the employee. *Greene v. Oliver Realty, Inc.*, 363 Pa.Super. 534, 526 A.2d 1192, *alloc. den'd.*, 517 Pa. 607, 536 A.2d 1331 (1987).

 The clearest manner in which a party can overcome the at-will doctrine is where the employer and the employee have entered into a contract which expresses a definite term of employment and forbids discharge in the absence of "just cause" or without first utilizing an internal dispute resolution mechanism. A clear and definite intention to overcome the presumption must be expressed in the contract. *Scott v. Extracorporeal, Inc.*, 376 Pa.Super. 90, 545 A.2d 334 (1988); *Veno v. Meredith*, 357 Pa.Super. 85, 515 A.2d 571 (1986). It is undisputed in the present case that Appellant did not enter into a contract of employment with the Hospital. Instead, Appellant claims that the existence of the Hospital's Manual, and the fact that it was the Hospital's custom and practice to utilize the procedures provided therein, modified his at-will employment and created an implied contract of employment. In other words, Appellant claims that the discipline and grievance procedures contained within the Manual allow only "just cause" termination. Such a claim places even a larger burden upon Appellant to overcome the at-will presumption. "In cases involving implied contracts of employment, the litigant will be able to reach the jury only if he can clearly show that he and the employer intended to form a contract." *DiBonaventura v. Consolidated Rail Corp.*, 372 Pa.Super. 420, 425, 539 A.2d 865, 868 (1988) (citation omitted).

As our Supreme Court recently stated:

It is basic contract law that one cannot suppose, believe, suspect, imagine or hope that an offer has been made. An offer must be intentional, definite, in its terms and communicated, otherwise the minds cannot meet.

\* \* \* \* \* \*

It is not sufficient to show [the employer] had a policy. It must be shown [the employer] offered it as binding terms of employment. A company may indeed have a policy upon which they intend to act, given certain circumstances or events, but unless they communicate that policy as part of a definite offer of employment they are free to change as events may require.

*Morosetti v. Louisiana Land and Exploration Co.*, 522 Pa. 492, 495, 496, 564 A.2d 151, 152, 153 (1989) (footnotes and citation omitted). *See also, Vincent v. Fuller Co.*, 400 Pa.Super. 108, 582 A.2d 1367 (1990), *alloc. granted*, 527 Pa. 637, 592 A.2d 1304 (1991) (this Court rejected purported reliance on company policy as the basis for a claim of implied employment contract).

In the present case, there is no evidence that the Hospital's Manual, or any of the corporate policies contained therein, were offered to Appellant as part of a definite offer of employment with the Hospital. Indeed, Appellant admitted in his deposition that the Manual was never distributed to him personally during his period of employment with the Hospital and that it was only after he was terminated that he obtained a copy of the Manual from a former colleague in the Department. Moreover, we note that, in discussing the effect of the Manual on his employment status, Appellant neglects to inform this Court of an express disclaimer found within an employee handbook distributed to him.[2] This disclaimer reads as follows: ·

The guidelines in this handbook are a summary of the [Hospital Manual] and group benefits policies with insur-

2. Under the heading, "Other Policies and Information for Your Guidance" and the sub-heading "Disciplinary Action," the employee handbook states that the Hospital's policies concerning disciplinary actions

ance companies, and *are not intended to be a legal contract.* These policies are revised from time to time. [Emphasis added].

As stated by the trial court, this "disclaimer" language in the front of the employee handbook—a document which summarizes provisions of the Manual—contains a clear expression of the Hospital's intention that the policies within the Manual, including those relating to disciplinary and grievance procedures, are not intended to constitute a contract, thereby conferring rights upon employees. Thus, Appellant's claim to the contrary is without merit, and, as a matter of law, the Manual cannot be found to create an implied contract of employment.[3]

 Appellant also argues that summary judgment should not have been granted as to Count I because a

are detailed in the Manual and that each department and patient unit had an up-to-date Manual to which employees were encouraged to refer. The disclaimer in the employee handbook is sufficient to place an employee on notice that the disciplinary procedures in the Manual were not offered as a part of a definite offer of employment.

As stated above, Appellant makes no mention of the disclaimer in the employee handbook. Therefore, this is not a case in which we must address the effect of distributing handbooks to all employees. It is only upon the Hospital's Manual that Appellant relies. Appellant would fare no better, however, if this were the case. It is only in the extreme situation where there is a very clear statement in the employee handbook of an intent to alter the employment-at-will relationship and legally bind the employer that the provisions of a handbook may be the basis for relief from the at-will rule. *Martin v. Capital Cities Media, Inc.,* 354 Pa.Super. 199, 511 A.2d 830 (1986), *alloc. den'd.,* 514 Pa. 643, 523 A.2d 1132 (1987). Indeed, for an employee handbook to be considered a contract it "must contain unequivocal provisions that the employer intended to be bound by it and, in fact, renounced the principle of at-will employment." *Reilly v. Stroehmann Bros. Co.,* 367 Pa.Super. 411, 416, 532 A.2d 1212, 1214 (1987), *alloc. granted,* 520 Pa. 577, 549 A.2d 137 (1988). The above express disclaimer clearly shows that the Hospital had no such intention.

3. Appellant also relies on changes to the various provisions of the Manual published at times in the *Presby News,* the Hospital's newsletter. Having already determined that the employee handbook expressed the Hospital's intent that the Manual did not convey contractual rights to employees, the Hospital's unilateral changes to these "policies" likewise do not modify Appellant's at-will employment.

genuine issue of material fact exists as to whether the Appellees terminated him with a specific intent to cause him harm. "[I]f the termination of an employee violates a clear mandate of public policy, or is done with a specific intent to harm the employee, a cause of action [for wrongful discharge] will lie." *Booth v. McDonnell Douglas Truck Services, Inc.*, 401 Pa.Super. 234, 242, 585 A.2d 24, 28 (1991), *alloc. den'd.*, 528 Pa. 620, 597 A.2d 1150, *citing Geary v. United States Steel, supra.* While the public policy exception to the at-will doctrine has become ingrained in Pennsylvania law, *see e.g., Reuther v. Fowler & Williams, Inc.*, 255 Pa.Super. 28, 386 A.2d 119 (1978) (*en banc*) (violation of public policy to discharge an employee for accepting jury service), it is questionable whether any tort claim for wrongful discharge exists in Pennsylvania. *See Clay v. Advanced Computer Applications, Inc.*, 522 Pa. 86, 98–99, 559 A.2d 917, 923 (1989) (Concurring Opinion by Nix, C.J.) (the Pennsylvania Supreme Court "did not announce a cause of action for wrongful discharge in *Geary....* Indeed, the language in *Geary* clearly states that a cause of action for wrongful discharge in an at-will employment relationship does not exist."), cited favorably in *Paul v. Lankenau Hospital,* 524 Pa. 90, 569 A.2d 346 (1990). The trial court was of the opinion that whether such a claim is cognizable in Pennsylvania is presently unsettled with this Court:

> Such a theory was recently recognized by the Superior Court in [*Booth v. McDonnell Douglas Truck Services, Inc.*, 401 Pa.Super. 234, 585 A.2d 24 (1991), *alloc. den'd.*, 528 Pa. 620, 597 A.2d 1150]. However, [four days] after *Booth* was filed, that same court held that an employee's allegation of wrongful discharge with specific intent to harm failed to state a cause of action. [*Yetter v. Ward Trucking Corp.*, 401 Pa.Super. 467, 585 A.2d 1022 (1991).]

Trial Court Opinion at p. 4. The trial court then stated that, rather than attempting to predict this Court's present position on this issue, it had reviewed the briefs and pleadings of the respective parties and found that, although Appellant

had suffered financially, he had failed to show the Appellees' specific motive for discharging him was to inflict harm upon him.

We believe that the *Booth* and *Yetter* decisions can be harmonized. In *Booth,* Booth argued that his employer terminated him so as to prevent him from receiving the commissions he claimed he was owed. In so arguing, Booth claimed that the employer terminated him with a specific intent to harm him, thereby giving rise to a cause of action for wrongful discharge. As support for this proposition, Booth cited to this Court's decision in *Tourville v. Inter–Ocean Insurance Co.,* 353 Pa.Super. 53, 508 A.2d 1263 (1986), *alloc. den'd.,* 514 Pa. 619, 521 A.2d 933 (1987), as authority that this exception exists. Citing no further authority, the *Booth* panel stated its agreement that termination by an employer with the specific intent to harm the employee gave rise to a cause of action for wrongful discharge, but held that Booth had not made out a case of specific intent to harm. In so holding, the *Booth* panel distinguished *Mudd v. Hoffman Homes for Youth, Inc.,* 374 Pa.Super. 522, 543 A.2d 1092 (1988), in which a panel of this Court allowed a cause of action for wrongful discharge where the plaintiff alleged that the firing was done to prevent her pension benefits from vesting, by stating that in *Mudd* there was no question that the plaintiff would be entitled to the pension benefits. The *Booth* panel stated that, under the facts with which it was presented, the amount which Booth claimed was due was disputed. While not stating so, the *Booth* panel concluded that Booth was not clearly entitled to these monies. In other words, because the plaintiff in *Mudd* would be entitled to these funds, a matter of public policy would be violated had she been terminated with the specific intention of depriving her of these funds. No such public policy considerations existed in *Booth.*

In *Yetter,* Yetter based his claim of wrongful discharge on the basis of specific intent to harm by arguing that the employer selectively enforced its company rules against

him, that his supervisor personally disliked him and was jealous of him, and that the employer exaggerated or fabricated numerous incidences of job misconduct by him. In a thorough discussion of whether a cause of action existed, the *Yetter* panel first reiterated the following recent statement by our Supreme Court in *Paul v. Lankenau Hospital, supra:*

> It should be noted that, as general rule, there is no common law cause of action against an employer for termination of an at-will employment relationship. *Geary v. United States Steel Corp.,* 456 Pa. 171, 319 A.2d 174 (1974). Exceptions to this rule have been recognized in only the most limited of circumstances, where discharges of at-will employees would threaten clear mandates of public policy.

*Yetter v. Ward Trucking Corp.,* 401 Pa.Superior Ct. at 473, 585 A.2d at 1025. The *Yetter* panel then stated that, while the Supreme Court considered and rejected Geary's cause of action based on specific intent to harm, the actual holding of *Geary* was "where the complaint itself discloses a plausible and legitimate reason for terminating an at-will employment relationship and no clear mandate of public policy is violated thereby, an employee at will has no right of action against his employer for wrongful discharge." *Id., citing Geary v. United States Steel Corp.,* 456 Pa. at 184–85, 319 A.2d at 180.

The *Yetter* panel then reviewed the subsequent treatment of the *Geary* holding in several cases decided by this Court:

> Although in several cases this Court has interpreted *Geary* as recognizing a cause of action under the specific intent to harm theory, *see Mudd v. Hoffman Homes For Youth, [supra]; Tourville v. Inter–Ocean Insurance Co., [supra]; Darlington v. General Electric,* 350 Pa.Super. 183, 504 A.2d 306, 318 (1986), in at least one case, this Court has interpreted *Geary* as viewing a discharge motivated by specific intent to harm as an example of when a discharge violates public policy. *Yaindl v. Ingersoll–Rand Co. Standard Pump–Aldrich Div.,* 281 Pa.Super. 560, 422 A.2d 611 (1980). We note that all of these

cases were decided prior to the *Clay* and *Paul* cases, which clearly hold that the only exception to the employment at-will doctrine is where the discharge violates clear mandates of public policy.

*Id.* The *Yetter* panel concluded, therefore, to survive a challenge for failure to state a cause of action, the complaint must establish the violation of public policy. Because Yetter had only raised the above reasons to support his claim of wrongful discharge, and because the allegations made did not rise to the level of significant and recognized public policy violations, *i.e.*, none of the allegations "[struck] at the heart of the citizen's social right, duties, and responsibilities," *Hineline v. Stroudsburg Electric Supply Co., Inc.*, 384 Pa.Super. 537, 559 A.2d 566 (1989), *alloc. den'd.*, 524 Pa. 628, 574 A.2d 70,[4] the *Yetter* panel affirmed the order of the trial court dismissing Yetter's complaint for failing to state a cause of action for wrongful discharge.

We repeat that the only exception to the at-will doctrine, absent a genuine contract of employment, is a discharge which impinges matters of public policy.[5] Paragraph 28 of Appellant's complaint alleges that the Appellees exhibited a specific intent to harm him through demotion and discharge. Appellant alleged that Forsythe stated to other employees at the Hospital and MHCD that he would "get" Appellant due to the actions of Appellant's former supervisor and that this malicious conduct is evidenced by the Appellees' refusal to accommodate Appellant in seeking

4. The public policy exception to the at-will doctrine of employment has been consistently recognized in Pennsylvania.

5. We are aware of our decisions which find the at-will doctrine of employment inapplicable where additional consideration has been rendered by the employee beyond the normal services for which the employee was hired, *Martin v. Capital Cities Media, Inc., supra,* or where the employee undergoes a substantial hardship other than the services which the employee is hired to perform, *Darlington v. General Electric, supra.* We need not address the continuing validity of these cases in light of *Clay v. Advanced Computer Applications Inc., supra,* because Appellant has not raised such a claim on appeal.

post-termination health benefits.[6] In his deposition, however, Appellant stated that it was the desire of Appellees to terminate as many employees of the Hospital in the Department as possible, in an attempt to fill the vacant positions with MHCD employees. Appellant also admitted as true that he had told potential employers that he was terminated as a result of MHCD's efforts to reduce the payroll and bring in its own people. As stated by a panel of this Court regarding similar allegations in *Yetter*, and concluded by the trial court in the present case, the allegations within Appellant's complaint do not rise to the level of significant and recognized public policy violations which would support a cause of action for wrongful discharge. Thus, the trial court did not err in dismissing this argument in Count I of Appellant's complaint as a matter of law. Appellant's claim to the contrary is without merit.

■ Appellant next claims that the trial court erred in granting summary judgment in favor of Appellees as to amended Count II of the complaint which raised a defamation claim. The trial court stated that the communications and the individuals involved were connected to the management of the Department and had a direct interest in Appellant's job performance. It therefore concluded that such communications among management-level personnel concerning an employee's job performance were necessary for the operation of the Department and, consequently, have been deemed "privileged" by caselaw in Pennsylvania. We agree that each alleged defamatory statement was conditionally, if not absolutely, privileged and, therefore, was not actionable as a matter of law.[7] *See generally, Sobel v.*

6. Appellant also claims that Appellees breached a duty of good faith and fair dealing toward him by denying him access to the grievance procedure and, therefore, that Appellees are liable under Section 205 of the Restatement (Second) of Contracts. This issue has not been developed on appeal and is, therefore, waived. Moreover, it is well-settled that no such cause of action is recognized in Pennsylvania. *See, e.g., Bruffett v. Warner Communications, Inc.,* 692 F.2d 910 (3d Cir.1982).

7. We note that Appellant has not set forth in his brief the specific statements alleged to be defamatory.

*Wingard*, 366 Pa.Super. 482, 531 A.2d 520 (1987) (Pennsylvania law recognizes an absolute privilege in connection with communications concerning employment termination); *Beckman v. Dunn*, 276 Pa.Super. 527, 419 A.2d 583 (1980) (conditional privilege attaches to a communication which is made upon a proper occasion, from a proper motive, in a proper manner and based upon reasonable cause). Thus, Appellant's claim is without merit.

 Appellant next claims that the trial court erred in granting summary judgment as to Forsythe and MHCD in regard to Count III of his complaint which raised a claim for intentional interference with a contractual or business relationship.[8] In his complaint, Appellant specifically states that Forsythe intentionally interfered with his alleged contractual and/or business relationship with the Hospital by revoking the disciplinary and discharge policies in the employee handbook "to ensure that the hospital employees, such as [Appellant] would remain terminated without question." Appellant's Complaint, Paragraph 37. The trial court concluded that Appellant had failed to state a cause of action, as a matter of law, because at all times pertinent to the case Forsythe and MHCD were acting as duly appointed agents of the Hospital and, therefore, no third party was present to interfere in Appellant's relationship with the Hospital. We agree.

In *Adler, Barish, Daniels, Levin and Creskoff v. Epstein*, 482 Pa. 416, 393 A.2d 1175 (1978), *cert. den'd.*, 442 U.S. 907, 99 S.Ct. 2817, 61 L.Ed.2d 272 (1979), the Pennsylvania Supreme Court recognized a cause of action for intentional interference with contractual and/or business relations, thereby adopting the following definition of the Restatement (Second) of Torts:

One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract,

8. On appeal, Appellant does not take issue with the trial court's grant of the Hospital's preliminary objection as to this count.

is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

Restatement (Second) of Torts, § 766. Essential to a right of recovery under this section is the existence of a contractual and/or business relationship between the plaintiff and a "third person" other than the defendant. By definition, this cause of action requires three separate parties; parties to a contract or employment relationship cannot assert this cause of action against each other. *Glazer v. Chandler*, 414 Pa. 304, 200 A.2d 416 (1964).

In the present case, any alleged "contract" or business relationship was between Appellant and the Hospital as his corporate employer.[9] A corporation is a creature of legal fiction which can act only through its officers, directors, agents and other employees. *Daniel Adams Associates, Inc. v. Rimbach Publishing, Inc.*, 360 Pa.Super. 72, 519 A.2d 997, *alloc. den'd.*, 517 Pa. 597, 535 A.2d 1056, *alloc. den'd.*, 517 Pa. 599, 535 A.2d 1057 (1987). Where employees or agents for the corporation act within the scope of their employment or agency, the employees, the agents and the corporation are one and the same; there is no third party. *Id.* Accordingly, Pennsylvania law is clear that where, as here, a claim for intentional interference is based upon an alleged "contract" or business relationship with an employer, and that relationship is terminated by an agent of the employer acting within the scope of his agency, there is no third party involved and no claim will lie. *Curran v. Children's Service Center*, 396 Pa.Super. 29, 578 A.2d 8 (1990), *alloc. den'd.*, 526 Pa. 648, 585 A.2d 468 (1991).

Upon review of the briefs of the parties, the various depositions and the pleadings, it is clear that Forsythe and MHCD were, at all times, acting as agents for the Hospital. Thus, no third person exists and the trial court did not err in granting summary judgment on their behalf. Appellant further claims that even if MHCD is not a separate entity,

9. We have already determined that Appellant did not have any type of contractual relationship with the Hospital.

his cause of action remains viable because an agent is liable for intentional interference if he or she intentionally and improperly induces his principal to break its contract with a third person. *Yaindl v. Ingersoll–Rand Co.*, 281 Pa.Super. 560, 422 A.2d 611 (1980). However, Pennsylvania law recognizes that corporate officers, directors, and other management personnel have a privilege to cause the corporate employer to terminate an employee. *Menefee v. CBS, Inc.*, 458 Pa. 46, 329 A.2d 216 (1974); *Daniel Adams Associates, Inc. v. Rimbach Publishing, Inc., supra.* Forsythe and MHCD caused the termination of Appellant due to the belief that Appellant engaged in wrongdoing. As a matter of law, they were privileged to do so. Appellant's claim of trial court error with regard to Count III of his complaint is, therefore, without merit.

■ Appellant next claims that the trial court erred in granting Appellees' preliminary objection, in the nature of a demurrer, to Count IV of his complaint which alleged a cause of action for civil conspiracy. In order to state a cause of action for civil conspiracy under Pennsylvania law, a complaint must allege the existence of all elements necessary to such a cause of action. *Burnside v. Abbott Laboratories*, 351 Pa.Super. 264, 505 A.2d 973 (1985). The Pennsylvania Supreme Court set forth the elements of civil conspiracy in *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 211, 412 A.2d 466, 472 (1979): "[I]t must be shown that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means." Proof of malice, *i.e.*, an intent to injure, is an essential part of a conspiracy cause of action; this unlawful intent must also be without justification. *Thompson Coal Co. v. Pike Coal Co., supra.* Furthermore, a conspiracy is not actionable until "some overt act is done in pursuance of the common purpose or design . . . and actual legal damage results[.]" *Baker v. Rangos*, 229 Pa.Super. 333, 351, 324 A.2d 498, 506 (1974) (citations omitted).

■ As stated above, both Forsythe and MHCD are agents of the Hospital. A single entity cannot conspire

with itself and, similarly, agents of a single entity cannot conspire among themselves. *See generally, Wells v. Thomas,* 569 F.Supp. 426 (E.D.Pa.1983); *O'Neill v. ARA Services, Inc.,* 457 F.Supp. 182 (E.D.Pa.1978). Moreover, because we have concluded that Appellees did not act unlawfully in terminating Appellant, Appellant's claim of civil conspiracy must also fail. *See Rose v. Wissinger,* 294 Pa.Super. 265, 439 A.2d 1193 (1982) (where complaint failed to set forth claim for defamation or outrageous conduct causing emotional distress, there could be no conspiracy to commit those acts); *see also Raneri v. DePolo,* 65 Pa.Cmwlth. 183, 187, 441 A.2d 1373, 1376 (1982) (under Pennsylvania law, when a party fails "to sufficiently allege in [other] counts any unlawful act or unlawful means" the conspiracy claim must also fail when it is based on these claims). Finally, we have also determined that Appellees did not act with a specific intent to harm Appellant. Thus, the trial court properly dismissed Count IV of Appellant's complaint.

■ Appellant's final claim is that the trial court erred in granting Appellees' preliminary objection, in the nature of a demurrer, to Count V of his complaint which alleged a cause of action for wrongful discharge based on negligence principles. Negligence is not a recognized exception to the at-will doctrine in Pennsylvania. Negligence is not a public policy matter which forms the basis for a wrongful discharge claim. *See, e.g., Engstrom v. John Nuveen & Co., Inc.,* 668 F.Supp. 953 (E.D.Pa.1987) (Pennsylvania does not recognize a claim for negligence arising from termination of an at-will employee); *Gaiardo v. Ethyl Corp.,* 697 F.Supp. 1377 (M.D.Pa.1986), 835 F.2d 479 (3d Cir.1987) (defendant owed no duty to use reasonable care in terminating plaintiff's at-will employment). Thus, the trial court correctly dismissed this Count of Appellant's complaint.

Orders affirmed.