**NOT PRECEDENTIAL**

**UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

———————

No. 14-1325

———————

DARRYL MCELROY,
                                         Appellant

v.

SANDS CASINO

———————

On Appeal from the United States District Court
for the Eastern District Pennsylvania
(District Court No.: 5-12-cv-06219)
District Court Judge: Honorable Jeffrey L. Schmehl

———————

Submitted under Third Circuit LAR 34.1(a)
on November 17, 2014

Before: RENDELL, JORDAN and NYGAARD, <u>Circuit Judges</u>

(Opinion filed: November 21, 2014)

———————

O P I N I O N*

———————

———————

*This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**RENDELL**, Circuit Judge:

Appellant Darryl McElroy appeals from the District Court's grant of Appellee Sands Casino's motions for summary judgment and to strike McElroy's opposition to summary judgment. We affirm because there were no genuine disputes of material fact and because the District Court did not abuse its discretion in granting the motion to strike.

## Factual Background

McElroy worked for Sands Casino ("Sands"). In the Fall of 2011, McElroy contacted Stacey Berasley, a Sands employee who handles benefits inquiries, to inquire about Family Medical Leave Act ("FMLA") leave. Berasley referred McElroy to Las Vegas Sands Corp. Leave Administration ("Leave Administration"), an outside organization that handles leave issues for Sands. In accordance with her typical practice, Berasley did not tell anyone about McElroy's inquiry. On December 15, 2011, Leave Administration told McElroy that his form was incomplete. McElroy never supplemented the information because Sands terminated him on December 19, 2011.

Sands terminated McElroy after investigating an incident that occurred on December 10, 2011 between McElroy and another Sands employee named Paul Lee. On that date, while entering an elevator with Lee, McElroy grabbed Lee's shoulder with one hand and grabbed or prodded him in the waist or lower back with the other hand, pushing Lee onto the elevator. Lee expressed anger and told McElroy not to touch him again, but

2

McElroy touched him again when they exited the elevator. Sands investigated the elevator incident and terminated McElroy.[1]

The Sands employee handbook describes a peer review procedure for appealing terminations. McElroy requested peer review, but Sands denied it because the termination involved sexual harassment, which is excepted from peer review.[2] The handbook also states that it does not create a contract for employment or benefits.

After his termination, McElroy filed suit against Sands, asserting claims for breach of his contractual right to peer review and for violation of his FMLA rights.

Sands filed a motion for summary judgment. McElroy filed an opposition brief that exceeded the permissible page limit 21 days later. Sands filed a motion to strike McElroy's opposition, asserting that McElroy failed to attach an unemployment hearing transcript referenced in his opposition brief, filed his opposition brief late, and exceeded the page limit.

The District Court granted the motion to strike, holding that the transcript should have been produced as supplemental discovery and that McElroy's opposition brief was untimely because it was not filed within 14 days pursuant to Eastern District of Pennsylvania Local Rule 7.1(c). The practical effect of the District Court's grant of the motion to strike is unclear. The District Court noted that "[t]hough striking the opposition

---

[1] Before Sands employed McElroy and Lee, McElroy had grabbed Lee's nipple when they were both at dealer school. And McElroy had been previously disciplined for inappropriate comments to female coworkers regarding a massage, for ordering alcohol at Sands while in uniform contrary to Sands' policy, and for making rude comments to another dealer.

[2] McElroy claims that the elevator incident was not sexual harassment and therefore that Sands improperly denied him peer review. This argument is immaterial because, as explained below, the handbook did not give him any contractual right to peer review. Furthermore, even if the elevator incident was not sexual harassment, the handbook specifies that Sands has the right to change its policies and benefits without prior notice and that Sands may make exceptions, at its discretion, to the policies.

may seem like harsh punishment for counsel's behavior, having reviewed the summary judgment opposition papers in connection with the motion to strike, the Court is confident nothing raised therein would seriously affect the outcome of the summary judgment analysis . . . ." (Dist. Ct. Op. 6.) Thus, it appears that the District Court considered McElroy's opposition brief to some extent in any event.

The District Court granted Sands' motion for summary judgment because, even though McElroy's FMLA inquiry and his termination were temporally close, "there surely can be no causal relationship between an FMLA request and a termination, and any temporal proximity cannot be considered suggestive, if the party making the termination decision had no knowledge of the FMLA request." (Dist. Ct. Op. 7.) The District Court noted that none of the employees involved in the termination decision knew about McElroy's FMLA request; the only Sands employee who knew was Berasley, who declared that she did not tell anyone else, and that declaration was not challenged or rebutted. The District Court concluded that "[n]othing in the record could support a jury's determination that anyone else knew; therefore, the retaliation claim fails as a matter of law." (Dist. Ct. Op. 9.) The District Court also held that McElroy's breach of contract claim failed because there was no contract, and the handbook did not show any intent on Sands' part to supplant Pennsylvania's at-will employment rule; to the contrary, the handbook evidenced Sands' intent to enforce the at-will rule.

On appeal, McElroy argues that the motion to strike should have been denied because 21 days was an appropriate response time for a motion for summary judgment,

4

the District Court failed to apply the *Poulis* factors in granting the motion to strike,[3] and he did not commit multiple errors. He also argues that summary judgment was improper because Sands management must have known about his FMLA inquiry either directly or constructively, and the timing between his FMLA request and his termination is obviously suggestive. In addition, he claims that Sands breached its contractual obligation to provide peer review before terminating him.

### Discussion

"We review the District Court's decision [grant]ing the motion to strike for an abuse of discretion." *Meditz v. City of Newark*, 658 F.3d 364, 367 n.1 (3d Cir. 2011). The District Court did not abuse its discretion. McElroy filed his opposition late, it was overly long, and it was incomplete because it did not include the necessary transcript. We conclude that the District Court did not err in granting summary judgment for Sands. "We review the District Court's order granting summary judgment de novo." *Id.* at 369.[4]

"To prevail on a retaliation claim under the FMLA, the plaintiff must prove that (1) [he] invoked h[is] right to FMLA-qualifying leave, (2) [he] suffered an adverse employment decision, and (3) the adverse action was causally related to h[is] invocation of rights." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301-02 (3d Cir. 2012). To establish a prima facie case, McElroy "must point to evidence in the record sufficient to create a genuine factual dispute about . . . (a) invocation of an FMLA right,

---

[3] *Poulis v. State Farm Fire & Cas. Co.* lists factors to consider in deciding whether to dismiss a case as a sanction. 747 F.2d 863, 868 (3d Cir. 1984). It is inapplicable because the District Court did not dismiss McElroy's case as a sanction; it granted a motion to strike and then adjudicated the motion for summary judgment, while giving consideration to McElroy's arguments.

[4] McElroy questions which documents the District Court reviewed in adjudicating the summary judgment motion after granting the motion to strike. Because our review is de novo, that question is moot.

5

(b) termination, and (c) causation." *Id.* at 302. If there is a prima facie case, "the burden of production shifts to [Sands] to articulate some legitimate, nondiscriminatory reason for its decision." *Id.* (quotation marks omitted). If Sands meets that burden, McElroy "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably . . . disbelieve [Sands'] articulated legitimate reasons." *Id.* (omission in original) (quotation marks omitted).

McElroy cannot establish a prima facie case because he cannot show causation. He has not pointed to any evidence that the decision-makers who investigated the elevator incident and decided to terminate him knew about his FMLA inquiry. "To the extent that [McElroy] relies upon the brevity of the time periods between the protected activity and alleged retaliatory actions to prove causation, he will have to show as well that the decision maker had knowledge of the protected activity." *Moore v. City of Philadelphia*, 461 F.3d 331, 351 (3d Cir. 2006) (citations omitted). Furthermore, even if he had shown a prima facie case, he has not pointed to any evidence that could cause a reasonable jury to disbelieve Sands' proffered reason for the termination so as to establish pretext. McElroy does not dispute that the elevator incident occurred. The sole issue is whether Sands had a legitimate, non-discriminatory, non-retaliatory reason for the termination. Sands investigated the elevator incident and concluded that McElroy's behavior warranted termination; there is no evidence that the decision-makers knew about his FMLA inquiry. No reasonable factfinder could conclude, based on the evidence presented, that Sands' decision was retaliatory.

Furthermore, the District Court properly granted summary judgment on McElroy's breach of contract claim because the employee handbook expressly disclaimed that it established a contractual right. Courts have rejected such claims when this disclaimer language alerts the employee to the employer's intent that the policies set forth do not constitute a contract. *E.g., Rutherfoord v. Presbyterian-Univ. Hosp.*, 612 A.2d 500, 504 (Pa. Super. Ct. 1992) ("[T]his 'disclaimer' language in the front of the employee handbook . . . contains a clear expression of the Hospital's intention that the policies within the Manual, including those relating to disciplinary and grievance procedures, are not intended to constitute a contract . . . . [A]s a matter of law, the Manual cannot be found to create an implied contract of employment.").

## **Conclusion**

The District Court's judgment is affirmed.