690 A.2d 1166

**Agnes OTTERSON, Appellant,**

**v.**

**Allen JONES, Appellee.**

Superior Court of Pennsylvania.

Argued Sept. 18, 1996.

Filed Feb. 14, 1997.

Reargument Denied April 17, 1997.

Evan Aidman, Newtown Square, for appellant.

William H. Resch, Jr., Philadelphia, for appellee.

Before DEL SOLE, BECK and POPOVICH, JJ.

POPOVICH, Judge:

The plaintiff/appellant, Agnes Otterson, appeals the order granting the Motion for Judgment on the Pleadings of the defendant/appellee, Allen Jones. We reverse.

"Like all summary judgments entered without a trial judgment on the pleadings may be entered only in clear cases free from doubt where there are no issues of fact, and only where the cause is so clear that a trial would clearly be a fruitless exercise.... The party moving for the judgment on the pleadings admits for the purpose of his motion the truth of all the allegations of his adversary and the untruth of any of his allegations which may have been denied by his adversary."

*Beck v. Minestrella,* 264 Pa.Super. 609, 401 A.2d 762, 763 (1979) (Citations omitted).

Under the preceding standard, we begin by observing that this case arose out of an alleged automobile accident occurring on August 13, 1992, whereby the plaintiff was struck from behind by the defendant causing her personal injury. Suit was instituted by complaint on April 29, 1994, and listed the defendant's address as 1707 Coolidge Avenue, Willow Grove, Pennsylvania. Service on the day the complaint was filed proved unsuccessful, as did a second attempt the following day.[1] Likewise, the plaintiff's request for a change of address

---

1. Contrary to the Dissent, our review is not limited to the "docket" entries to assess the plaintiff's "good faith" efforts to serve the complaint to avoid the barring effect of the statute of limitations under *Lamp v. Heyman,* 469 Pa. 465, 366 A.2d 882 (1976). Rather, the moving party (defendant) "admits ... the truth of all the allegations of his adversary and the untruth of any of his allegations which may have been denied by his adversary." *Beck v. Minestrella,* 264 Pa.Super. 609, 401 A.2d 762, 763 (1979).

Applying *Beck* here labels as "untrue" the defendant's claim in his Motion for Judgment on the Pleadings at Paragraph 3 that the plaintiff did not make "any effort" to serve him within 30 days of filing the complaint per Pa.R.Civ.P. 401. Exhaustive efforts were made by the plaintiff to serve the defendant before the statute of limitations expired. See Plaintiff's Response to the Defendant's Motion for Summary Judgment on the Pleadings at Paragraphs 3-6.

from the post office in Willow Grove (dated 7/12/94) resulted in a response that the defendant was "[n]ot known at the address given". Also, a search with the Pennsylvania Department of Transportation (dated 7/12/94) and inquiry of the plaintiff's insurance carrier [2] (dated 7/29/94) proved fruitless.

It was not until counsel for the plaintiff's insurer (Utica) informed the plaintiff by letter dated 3/28/95 that the defendant resided at 5302 Catherine Street, Philadelphia, that the complaint was reinstated April 5, 1995, with service made on April 15, 1995. In his Answer, the defendant admitted the Willow Grove address was accurate, but he averred in New Matter that the plaintiff's failure to serve the complaint within two years of the accident rendered it time-barred by the applicable statute of limitations and *Lamp v. Heyman,* 469 Pa. 465, 366 A.2d 882 (1976). The court below agreed and entered judgment for the defendant. This appeal followed and claims that the plaintiff made a "good faith" effort (per *Lamp* ) to serve the defendant.

 *Lamp* and its progeny require that the tolling effect of the statute of limitations will be extended to plaintiffs who make a "good faith" effort to effectuate service, and, in the process, refrain from conduct which serves to stall in its tracks the machinery he/she set in motion. What constitutes a "good faith" effort to serve legal process is a matter to be assessed on a case-by-case basis. See *Leidich v. Franklin,* 394 Pa.Super. 302, 575 A.2d 914 (1990).

At bar, the complaint for injuries sustained on August 13, 1992, was filed April 29, 1994. With service made on April 15, 1995, we need to evaluate the measures taken to give the

Also, the plaintiff's Memorandum of Law reads: "Service of the Complaint was attempted on April 29, 1994, the very day the complaint was filed. This attempt was unsuccessful as was a later attempt the next day."

Finally, the Dissent's argument of non-compliance with Pa.R.Civ.P. 400.1(a)(2)'s service by a deputized sheriff (versus an adult) is waived with its presentment by the appellee for the first time on appeal at pages 10–11 of his brief. See Pa.R.App.P. 302(a).

**2.** The plaintiff instituted suit to protect her insurer's (Utica's) subrogation rights. See Reproduced Record at 60a.

defendant notice of the lawsuit between April 29, 1994, and April 15, 1995. Toward that end, the record reveals that:

1) The same day the complaint was filed, service at the defendant's Willow Grove address proved unsuccessful; [3]

2) Conversation with the defendant's Willow Grove neighbors on April 29, 1994, disclosed that the defendant allegedly moved one and one-half years earlier;

3) A second attempt to serve the defendant following the initial effort proved equally fruitless, along with finding no mail on either occasion listing the defendant as the addressee at the Willow Grove location;

4) The plaintiff contacted directory assistance on June 30, 1994, and learned that there was no listing for the defendant in Willow Grove;

5) A request of the Willow Grove postmaster for a change of address for the defendant produced a return on July 19, 1994, that the defendant did not receive mail there;

6) A July 12, 1994, search with the Pennsylvania Department of Transportation produced no record of any vehicles owned by the defendant at the Willow Grove site;

7) On July 29, 1994, the plaintiff informed her insurance carrier (Utica) of her unsuccessful efforts to locate the defendant, and she asked what, if any, additional steps could be taken to protect Utica's subrogation rights with her submission of a claim for uninsured motorist coverage;

8) Utica advised the plaintiff by letter dated March 28, 1995, that it wished to have its subrogation rights protected and released the defendant's Philadelphia address; and

9) The defendant was served on April 15, 1995.

It is the court's conclusion that the plaintiff failed to preserve her cause of action prior to the expiration of the statute of limitations, a matter which allegedly could have been avoid-

3. By letter dated June 4, 1993, the defendant's insurance carrier (Nationwide) indicated its frustration at the failure of the defendant to reply to the carrier's *repeated* correspondence seeking information regarding the August 13, 1992, accident. The letter was addressed to the defendant's Willow Grove residence and noted that the defendant's telephone was unlisted.

ed had she "filed a petition for alternate service". See Court Opinion at 6.

▮ The Rule allowing for the grant of "special" service by order of court lists conditions precedent to secure such relief; to-wit:

(a) If service cannot be made under the applicable rule the plaintiff *may* move the court for a special order directing the method of service. The motion shall be accomplished by an affidavit stating the nature and extent of the investigation which has been made to determine the whereabouts of the defendant and the reasons why service cannot be made.

### Note

A sheriff's return of "not found" or the fact that a defendant has moved without leaving a new forwarding address is insufficient evidence of concealment. Notice of intented adoption mailed to last known address requires a "good faith effort" to discover the correct address.

An illustration of a good faith effort to locate the defendant includes (1) inquiries of postal authorities including inquiries pursuant to the Freedom of Information Act, 39 C.F.R. Part 295, (2) inquiries of relatives, neighbors, friends, and employers of the defendant, and (3) examinations of local telephone directories, voter registration records, local tax records, and motor vehicle records.

Pa.R.Civ.P. 430 and Note (Citations omitted; emphasis added).

The criteria listed in the Note to Rule 430 mirror in part [4] those measures implemented by the plaintiff to locate the defendant. Therefore, we do not embrace the view of the court that the mere "filing" of a petition for alternate service would have had the talismanic effect of preserving the plain-

4. The Note to Rule 430 indicates that inquiries be made of a defendant's relatives, friends and employers. However, this assumes knowledge of such individuals on the part of the plaintiff or access to a source leading to the disclosure of such persons. No such awareness has been ascribed to the plaintiff by either the defendant or the court.

tiff's cause of action. Rather, one needs to examine the basis for a Rule 430 service. In like fashion, the assessment of one's "good faith" effort to serve legal process to toll the statute of limitations necessitates review of the basis for such a claim before the insulating effect of *Lamp* is triggered.

We have engaged in such a review here and hold that the conduct of the plaintiff was consonant with *Lamp's* "good faith" effort to locate the defendant and toll the statute of limitations. For example, the plaintiff: 1) attempted service (twice) at the address "admitted" by the defendant (in his Answer to the plaintiff's complaint) to be accurate; 2) the defendant's neighbors were unable to shed light on where he lived; 3) on-site examination of the Willow Grove address produced no mail in the defendant's name; 4) communication with governmental agencies (i.e., the post office and Department of Transportation) was to no avail; 5) the defendant's insurer had no knowledge of his whereabouts; 6) directory assistance was unable to provide a phone number for the defendant; and 7) the plaintiff sought assistance from her insurer to locate the defendant.

We view the preceding as uncharacteristic of simple negligence or mistake assigned to plaintiffs whose suits have been dismissed as violative of the *Lamp* "good faith" standard. See, e.g., *Cahill v. Schults*, 434 Pa.Super. 332, 643 A.2d 121 (1994)(Plaintiff's failure to attach check to pay for sheriff's service, although the product of mistake or inadvertence, failed to satisfy the "good faith" needed to overcome noncompliance with *Lamp* ); *Rosenberg v. Nicholson*, 408 Pa.Super. 502, 597 A.2d 145 (1991)(Plaintiff's service of complaint at incorrect address twice, even after receiving correct address from post office after first incorrect service, was inexcusable under *Lamp* ); *Williams v. SEPTA*, 137 Pa.Cmwlth. 163, 585 A.2d 583 (1991)(Plaintiff made no attempt to thwart service, but he took no affirmative action to insure the writ was served in accordance with the Rules of Civil Procedure—sheriff versus mail); *Feher v. Altman*, 357 Pa.Super. 50, 515 A.2d 317 (1986)(Although plaintiff did not actively attempt to thwart service, the failure to prepay the sheriff or give the sheriff

instructions amounted to the absence of affirmative action to see that the writ was served).

We, unlike the court below, equate the plaintiff's efforts to find the defendant with a "good faith" expenditure of energy required by *Lamp* and its progeny to avoid termination of this lawsuit for exceeding the statute of limitations. See *Leidich*, supra. The plaintiff, when confronted with the absence of the defendant at his Willow Grove address, utilized alternate means in an attempt to search for the defendant. See *Wible v. Apanowicz*, 306 Pa.Super. 262, 452 A.2d 545 (1982)(It is reasonable to expect that a plaintiff, if he knows that process could not be served at a given address, will employ alternate means to effectuate service: check phone book, city directory, or license files).

Thus, we have a suit in which the plaintiff *did attempt to effectuate service* by a "good faith" effort to locate the defendant. Contrast *Rosenberg*, supra. Her actions were numerous and extensive in seeking the defendant's whereabouts, a fact which is not lost or minimized despite the absence of a "continuous" effort to effectuate service from issuance of complaint to actual service. Such a form of perpetual, all-consuming vigilance in seeking the defendant is not mandated by law. See *Patterson v. American Bosch Corp.*, 914 F.2d 384, 390–91 (3rd Cir.1990).

Further, the plaintiff will not be penalized for failing to secure a Rule 430 alternate service when the procedure is not mandatory (plaintiff *may* move the court for special order), and especially since the facts underlying such a course of action are reflective of the plaintiff's "good faith" efforts to learn of the defendant's location and track the spirit and purpose behind *Lamp* ("to avoid the situation in which a plaintiff can bring an action, but, by not making a good-faith effort to notify a defendant, retain exclusive control over it for a period in excess of that permitted by the statute of limitations."). 469 Pa. at 477, 366 A.2d at 888. Even the defendant concedes as much in his appellate brief at 13, where it is written that the "plaintiff arguably made a good faith effort to

locate [him] and provide a basis [for] a motion seeking permission for special service. . . ."

Lastly, nowhere does the defendant state how he would be prejudiced by allowance of this lawsuit: no physical or testimonial evidence has been lost or destroyed, nor is there evidence that witnesses have died or memories waned impairing the ability to defend this rear-end collision case. See *Leidich,* supra.

In view of the foregoing, we find that the court below abused its discretion in holding that the plaintiff engaged in a course of conduct which stalled the legal process for more than two years after the original complaint was filed. This conclusion dispenses with the need to address the plaintiff's second issue challenging the manner and method of raising the statute of limitations defense.

Order reversed; case remanded and jurisdiction relinquished.

DEL SOLE, J., files a Dissenting Opinion.

DEL SOLE, Judge, dissenting.

Once again, we must decide whether the statute of limitations is properly tolled in light of *Lamp v. Heyman,* 469 Pa. 465, 366 A.2d 882 (1976). Suit was commenced by complaint filed on April 29, 1994, well before the statute tolling date for the accident in question which occurred on August 13, 1992. The majority states, "Service on the day the complaint was filed proved unsuccessful, as did a second attempt the following day." I agree with the majority that in order to effectively toll the statute of limitations service need not be completed. Rather a good faith effort must be made to effect service. Had my review of the record concluded that there was such an attempt at service during the thirty days following the filing of the complaint, i.e., during the life of the process, I would join.

Unfortunately, the record does not show a good faith attempt at service. No return of service, as required by Pa. R.Civ.P. 405, was filed detailing the attempts to serve Defendant on April 29 and 30, 1994. Absent such a docket entry, I

cannot conclude, as the majority suggests, that service was attempted within the life of the process.

While I admire the majority's attempt to suggest that there was a good faith effort at service, I hasten to point out that the docket entries are important and that exhibits attached to the briefs are not part of the record. In footnote 1, the majority concludes, "Exhaustive efforts were made by the plaintiff to serve the defendant before the statute of limitations expired." Unfortunately, these efforts are not documented on the docket or in the record except as allegations in the plaintiff's brief. The majority misreads Exhibit D to the brief as an attempt at service when in fact all it describes are efforts to locate an address for the defendant. Unlike the majority, I cannot accept this as fact. Statements that are made in a party's brief which are not otherwise established by the record are not facts.

Furthermore, the response to the motion for judgment on the pleadings details only an attempt to locate the defendant by an individual identified only as Raymond Kosyla. In order to effect proper service against Defendant, whose address is in Willow Grove in Montgomery County,[1] Appellant had to serve Defendant pursuant to Pa.R.Civ.P. 400.1(a)(2), which requires service "by deputized service as provided by Rule 400(d) or by a competent adult forwarding the process to the sheriff of the county where service may be made." Only in Philadelphia County may service be made under Rule 400.1(a)(1) which allows service by a competent adult. See, *Dubrey v. Izaguirre and Centennial Trans./Academy Cab, et al.,* 454 Pa.Super. 504, 685 A.2d 1391 (1996) (service invalid on its face where Bucks County corporation served by private process server). Had Appellant followed this rule, the sheriff of Montgomery County would have filed, as required, a return of service showing that Defendant could not be found.

Our court has held, "At a minimum, the good faith effort required in *Lamp v. Heyman, supra,* mandates compliance with the Pennsylvania Rules of Procedure...." *Feher by*

---

1. We may take judicial notice of the fact that Willow Grove is in Montgomery, not Philadelphia, County.

*Feher v. Altman,* 357 Pa.Super. 50, 53, 515 A.2d 317, 319 (1986). Appellant here has not complied with the rules of service set forth in the Pennsylvania Rules of Civil Procedure. She has not therefore satisfied the *Lamp v. Heyman* good faith standard.