## Scalice v. Pennsylvania Employees Benefit Trust Fund

C.P. of Blair County, no. 02 GN 2511.

*James D. Belliveau* and *Nathanial Smith,* for plaintiff.
*Richard Kirschner,* for defendant.

KOPRIVA, *J.,* March 12, 2003—

## PROCEDURAL HISTORY

Plaintiff initiated this action in Allegheny County by filing a complaint for declaratory judgment on March 13, 2000. On May 1, 2002, defendant filed a petition for change of venue on the basis of forum non conveniens. The Honorable Eugene B. Strassburger III ordered all pleadings, briefs and related matters in this case transferred to this court by May 28, 2002.

On August 16, 2002, defendant filed a motion for summary judgment and/or judgment on the pleadings. After reviewing the matter, this court granted defendant's motion on October 29, 2002. However, on November 8, 2002, plaintiff filed a petition to open judgment and for reconsideration.[1] Plaintiff also filed his brief in opposition to defendant's motion for summary judgment and/or judgment on the pleadings on the same day. On November 14, 2002, defendant filed an answer to the petition to open judgment and for reconsideration and a brief in support thereof. Defendant also filed a reply brief to plaintiff's brief in opposition to defendant's motion for summary judgment and/or judgment on the pleadings. On November 14, 2002, this court opened the October 29, 2002 judgment and granted reconsideration. We heard oral argument on defendant's motion for summary judgment and/or judgment on the pleadings on January 28, 2003. This matter is currently ripe for disposition.

---

1. Plaintiff did not file an initial response to defendant's motion for summary judgment and/or judgment on the pleadings. Plaintiff's counsel was unaware of the requirements of Blair County Local Rule 325, which mandates all response briefs to be filed no later than 20 days of receipt of the moving party's brief, and allows the court to dispose of the motion without a timely-filed response brief.

## FACTUAL HISTORY

On October 30, 1997, plaintiff was seriously injured in an automobile accident. Plaintiff possessed medical insurance benefits under a policy of insurance issued pursuant to the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL). However, he exhausted the policy limits for his medical insurance. At the time of the accident, plaintiff possessed health insurance with his employer, the Commonwealth of Pennsylvania, Department of Corrections. Defendant/Pennsylvania Employees Benefit Trust Fund (PEBTF) insured plaintiff as an employee of the Commonwealth of Pennsylvania, under a group health benefits plan that defendant issues and administers. After exhaustion of his first party benefits, plaintiff submitted claims for payment of medical expenses to the PEBTF and the PEBTF paid a number of bills for expenses related to injuries suffered by plaintiff in relation to the October 30, 1997 accident.

The liable third party offered plaintiff the sum of $100,000 for his injuries. Defendant is currently asserting a subrogation lien in the amount of $43,795.96 against the funds received from the third party's liability carrier. Defendant asserts that 75 Pa.C.S. §1720 does not bar its subrogation right because of the Employee Retirement Income Security Act (ERISA) preemption pursuant to the ruling in *FMC Corp. v. Holiday,* 498 U.S. 52 (S.Ct. 1999).

## DISCUSSION

Section 1720 of the MVFRL provides the general rule that no right of subrogation from a claimant's tort recov-

ery exists with respect to benefits paid by a healthcare benefits plan. This section provides:

"In actions arising out of the maintenance or use of a motor vehicle, there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to . . . benefits paid or payable by a program, group contract or other arrangement . . . ." 75 Pa.C.S. §1720.

An exception to this rule exists where the employee benefit plan qualifies under ERISA. 29 U.S.C. §1001 et seq. In *FMC Corp., supra,* the Supreme Court of the United States ruled that ERISA employee benefit plans are entitled to subrogation.

"In view of Congress' clear intent to exempt from direct state insurance regulation ERISA employee benefit plans, we hold that ERISA preempts the application of section 1720 of Pennsylvania's Motor Vehicle Financial Responsibility Law . . . ." *FMC Corp.,* 498 U.S. at 65.

At the time of the accident, the PEBTF was an ERISA-qualified plan.[2] As of January 1, 1998, the PEBTF relinquished its ERISA-qualified status and became an ERISA-exempt governmental plan.[3] The PEBTF paid $23,724.81

---

2. Tommy Teague, executive director of the PEBTF, stated in his affidavit that "the PEBTF continued to maintain its ERISA status [from at least 1996 when the U.S. Department of Labor confirmed the PEBTF's ERISA status] through, and until January 1, 1998, when most of the private employers voluntarily withdrew with only de minimis private employer participation thereafter." William Schantzenbach, chief financial officer of the PEBTF, also acknowledged in his affidavit that the PEBTF relinquished its ERISA status on January 1, 1998.

3. See FN 1. In addition, plaintiff admits, "as of January 1, 1998, the PEBTF became a government plan, as that term is defined in the ERISA." (Plaintiff's brief in opposition to defendant's motion for summary judgment and/or judgment on the pleadings, 3.)

for services rendered to plaintiff in 1997 and $19,978.87 for services rendered in 1998. No documentation exists to indicate when the PEBTF actually made the payments for the aforementioned services. Plaintiff argues the actual payment dates become a critical issue in light of the ruling of the Honorable Gary P. Caruso's *Decision and Order* in *Wimer v. PEBTF,* 5322 of 2001 (C.P. Westmoreland),[4] which held that subrogation rights do not arise *until payments are actually made.* Plaintiff argues that since we do not know the date defendant actually made the payments, a material issue of fact exists and no summary judgment can be awarded. Defendant argues that the date of injury, not payment, dictates whether it is entitled to subrogation. Since the accident occurred while the plan was an ERISA-qualified employee benefit plan, the PEBTF may seek subrogation even if it did not make payments for services rendered in connection with the accident until after the plan lost its ERISA status.

Plaintiff relies on two cases to support his position: *Haney v. Commonwealth of Pa. Treasurer's Office,* 1992 WL 209265 (E.D. Pa. 1992) and *Wimer, supra.* We will individually address the relevance of each case.

In *Haney, supra,* the plaintiff worked for the Commonwealth of Pennsylvania until she took a leave of absence in 1989 due to an injury. While on leave she continued to maintain health insurance coverage under her group health plan with the PEBTF. When the plaintiff's leave with benefits expired on July 24, 1989, she exercised her right to elect continuation of health-care cov-

---

4. *Wimer, supra,* is presently on appeal to the Pennsylvania Superior Court.

erage. Soon thereafter, the plaintiff learned of the closing of her department at the treasurer's office and the need to apply for disability retirement immediately or forever lose her right to do so.

On November 2, 1989, the State Employees Retirement Board approved the plaintiff's application for disability retirement retroactive to January 20, 1989, based upon her permanent injury. She also received free retired employees group health insurance, although she was not required to accept the free coverage as a condition of her receiving disability retirement. On November 7, 1989, the Pennsylvania Employees Health and Welfare Fund notified the plaintiff that she was no longer eligible for her continuation coverage as a result of her enrolling in another group health plan. *Id.*

The plaintiff filed suit alleging inter alia that the termination of her continuation coverage violated the ERISA. The court held that the plaintiff's employee benefit plan was a governmental plan as defined by the ERISA statute and therefore excluded from coverage thereunder. *Id.*

We do not find *Haney* relevant to the present action. In *Haney,* the controlling issue became whether the benefit plan fit the definition of "governmental plan" within the ERISA statute. The court held that the plan did fit such definition and therefore correctly deemed the plan exempt from ERISA status. In the case herein, the issue is not whether the plan qualifies under ERISA (we already know that it did in 1997 but not after January 1, 1998), but rather, whether the plan's right of subrogation under ERISA is determined as of the date of the accident or when benefits are paid.

In *Wimer, supra,* the plaintiff was involved in a motor vehicle accident. At the time of the accident, the plaintiff, employed by the Commonwealth of Pennsylvania, belonged to the PEBTF. Following exhaustion of his first party automobile insurance benefits, the plaintiff's medical bills were forwarded to PEBTF for payment. The PEBTF paid two medical bills in 1997, and then made no additional payments until after January 1, 1998. As of April 12, 2001, the PEBTF asserted a lien against the plaintiff for $35,815.90, representing the total amount of benefits paid by the PEBTF both before and after January 1, 1998.

The plaintiff filed a declaratory judgment action requesting, inter alia, a declaration that the subrogation rights of the PEBTF are limited to the amount of medical bills paid on the plaintiff's behalf prior to January 1, 1998.[5] The defendant argued, as defendant does herein, that its subrogation rights must be determined as of the *date of the accident* and not as to the dates on which payments were actually made. The court noted that the only change that occurred involved the qualification and status of the defendant under ERISA. Therefore, the court held that "[t]he change in the status of defendant does not warrant the conclusion, as defendant would propose, that the defendant is entitled to subrogation for all payments made after it was no longer qualified under ERISA merely because it was ERISA-qualified on the date of the plaintiff's injury." *Wimer, supra.*

5. The parties made the following pertinent stipulations: (1) At the time of the accident on October 3, 1997, PEBTF was an ERISA-qualified plan; and (2) As of January 1, 1998, PEBTF relinquished its ERISA-qualified status and became an ERISA-exempt governmental plan. *Wimer, supra.*

We find the Honorable Gary P. Caruso's decision uncompelling. Variables that do not appear accounted for within the analysis and holding in *Wimer, supra,* may have the unintended consequence to allow/promote manipulation of the process of determining whether a plan possesses the right of subrogation. For instance, providers must send a bill to the plan/PEBTF in order to receive payment. Neither the PEBTF, nor the claimant, nor any court can control when the provider sends the bill for payment. The provider may wait one week, one month, six months or longer after providing the service before seeking reimbursement. In the time it takes the provider to send a bill, the status of the plan may change. Additionally, neither the claimant nor this court can dictate when the plan/PEBTF makes payment to the medical provider. A situation may occur where the PEBTF receives a bill while classified as a governmental plan but holds the bill for such a period of time that when it finally sends payment, the plan has been reclassified as an ERISA-qualified plan and therefore entitled to subrogation.

In summary, we fear that following the reasoning of the Honorable Gary P. Caruso's opinion will create a blueprint for inconsistency and manipulation in regards to this and similar cases. Such a result would not be desirable for fair and just treatment of all parties. Conversely, if the plan's right of subrogation under ERISA is determined by the *date of injury*, the above-mentioned tactical decisions cannot and do not arise. A neutral starting point defines the obligations. From the instant the claimant suffers injury, both the claimant and those administering the employee benefit plan will have a clear and

"manipulation free" point of reference as to whether the plan is entitled to subrogation. Members will know clearly and concisely the appropriate expectation for their coverage and benefits. In addition, the provider and those administering the benefit plan will not possess the opportunity to manipulate the system and dictate results. Further, it is a common insurance industry standard that the benefit and duty of coverage arises at the time of an insured incident.

This court shall grant a motion for judgment on the pleadings only in cases free from doubt and where no issues of fact exist. *Otterson v. Jones,* 456 Pa. Super. 388, 690 A.2d 1166 (1997), *alloc. granted,* 550 Pa. 696, 705 A.2d 1310 (1997); *Miketic v. Baron,* 450 Pa. Super. 91, 675 A.2d 324 (1996). Likewise, an entry of summary judgment may be granted only in cases where the right is clear and free from doubt. A motion for summary judgment may properly be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue as to a material fact and the moving party is entitled to judgment as a matter of law." Pa.R.C.P. 1035(b). See also, *Liles v. Balmer,* 389 Pa. Super. 451, 453, 567 A.2d 691, 692 (1989); *Pestalozzi v. Philadelphia Flyers Ltd.,* 394 Pa. Super. 420, 423, 576 A.2d 72, 73 (1990); *Craddock v. Gross,* 350 Pa. Super. 575, 578, 504 A.2d 1300, 1301 (1986); *Johnson v. Harris,* 419 Pa. Super. 541, 615 A.2d 771 (1992); *Carns v. Yingling,* 406 Pa. Super. 279, 282, 594 A.2d 337, 339 (1991); *Buckno v. Penn Linen & Uniform Service Inc.,* 428 Pa. Super. 563, 631 A.2d 674 (1993), *appeal denied,* 538 Pa. 639, 647 A.2d 895 (1994).

Since we have held that an employee benefit plan's right of subrogation is determined by the date of injury and defendant's plan was indisputably an ERISA-qualified plan on the date of the accident, it is clear to this court that the aforementioned standards are met. Defendant possesses a right to subrogation against all payments it made on behalf of plaintiff relative to the October 30, 1997 automobile accident.

In light of the above opinion, this court enters the following:

## ORDER

And now, March 12, 2003, it is ordered, directed and decreed that defendant's motion for summary judgment and/or judgment on the pleadings is granted, and plaintiff's complaint for declaratory judgment is dismissed with prejudice. Judgment is hereby entered in favor of the PEBTF on its counterclaim against plaintiff in the amount of $43,795.94 plus interest and costs.